COMMONWEALTH OF MASSACHU-
SETTS by its DEPARTMENT OF
PUBLIC WELFARE, Plaintiff,

v.

Margaret HECKLER et al., Defendants.

Civ. A. No. 82–1048–G.

United States District Court,
D. Massachusetts.

Jan. 12, 1984.

**1566**

Leah S. Crothers, Ellen L. Janos, William L. Pardee, Asst. Attys. Gen., Boston, Mass., for plaintiff.

Ralph Child, Asst. U.S. Atty., Boston, Mass., Ellen J. Sazzman, Robin M. Stutman, Dept. of Justice, Civil Div., Washington, D.C., for defendants.

## MEMORANDUM AND ORDER THAT JUDGMENT BE ENTERED FOR PLAINTIFF

GARRITY, District Judge.

In this action the Commonwealth of Massachusetts (Commonwealth) seeks judicial review, pursuant to 5 U.S.C. § 702, of a final decision of the Departmental Grant Appeals Board (GAB) of the Department of Health and Human Services (HHS). The GAB disallowed approximately $3.7 million in federal Medicaid reimbursement to the Commonwealth to offset a prior overpayment of $3.7 million. The Commonwealth also seeks declaratory and injunctive relief, pursuant to 5 U.S.C. §§ 702, 703 and 28 U.S.C. § 2201, to determine the rights and obligations of the Commonwealth under the Medicaid program, 42 U.S.C. § 1396b *et seq.*, and to prevent the withholding of the federal funds.

The dispute arose following a routine audit of the accounts receivable ledgers of the Commonwealth's Department of Public Welfare (DPW) by the Health Care Financing Administration (HCFA). This agency is a part of HHS, and is responsible for administering the Medicaid program at the federal level. The audit not coincidentally followed the filing in bankruptcy of 27 nursing homes (IDAK et al.) which had been receiving Medicaid payments. On February 21, 1980, HCFA issued its decision that the Commonwealth had overpaid these nursing homes by more than $10 million, so that the Commonwealth owed HHS $5,115,610. This amount represents the amount paid to the Commonwealth by HHS in excess of the final rate, less the amount which had been repaid by the Commonwealth to HHS. HHS was authorized by HCFA to offset this amount against Federal Financial Participation (FFP) owed to the Commonwealth. This offset procedure is known as a disallowance.

The Commonwealth timely appealed this decision to the GAB, which on February 26, 1982 sustained the disallowance and directed the parties to resolve the question of the exact amount owing to HHS. This was finally accomplished on June 30, 1983, the amount being $3,703,098, but pending this appeal no adjustment has been made to the amounts paid to the Commonwealth.[1]

---

1. Defendant had moved to dismiss for failure to exhaust administrative remedies and for lack of ripeness for judicial review. Both these motions have been mooted by the final administra-

On April 22, 1982, the Commonwealth filed actions appealing the GAB's decision in both this court and the United States Court of Appeals for the First Circuit. On August 20, 1982, defendant HHS filed a motion to dismiss in our court. We stayed our decision on this motion pending the decision by the Court of Appeals. On January 12, 1983, the appellate court held that it was without jurisdiction to hear the case, rejecting plaintiff's argument that this was a "noncompliance" case rather than a disallowance suit. Had it been the former, the Court of Appeals would have had jurisdiction under 42 U.S.C. § 1316(a)(3). The court explained the difference between the two concepts as follows:

> Disallowances typically involve a denial of FFP [Federal Financial Participation] for a narrow item or class of items, and do not, in some general sense, affect the working of the program or federal-state cooperation. Whereas a finding of noncompliance can (although it need not) lead to the cessation of federal participation altogether, a disallowance is merely a retrospective refusal to share in an unauthorized expenditure.

*Commonwealth of Mass. v. Departmental Grant Appeals Board,* (1st Cir.1983) 698 F.2d 22 at 25. The court found that this was not a compliance matter since it merely involved a dispute over "specific excess payments in certain limited circumstances, and not ... the state's overall ratesetting or payment methodology." At 29. Were the failure to reimburse HHS its share of excess payments itself to constitute noncompliance, then this would render meaningless the distinction between noncompliance actions and disallowance actions. Since 42 U.S.C. § 1316(a)(3) granted jurisdiction to the Court of Appeals only in noncompliance actions, the court held that it lacked jurisdiction to review the GAB's disallowance decision. It withheld its judgment until further notice, however, so as not to put the Commonwealth in the awkward position of being forced to challenge the ruling by petition for certiorari to the Supreme Court before knowing whether it could obtain review in the district court.

tive determination of the amount owing, and

The court authorized the district court to act in related proceedings notwithstanding that judgment has yet to be entered.

■■■■ On November 30, 1983, we heard argument on defendant's motion to dismiss. Defendant did not press its motion to dismiss for lack of jurisdiction. However, even where jurisdiction is uncontested, it is the court's responsibility to determine whether it has jurisdiction. We hold that it does. *County of Alameda v. Weinberger,* (9 Cir.1975) 520 F.2d 344, *Woodstock/Kenosha Health Center v. Schweiker* (7 Cir. 1983) 713 F.2d 285.

The remaining issue is whether plaintiff has failed to state a claim upon which relief may be granted. This turns on whether HHS has correctly interpreted the Medicaid provisions of the Social Security Act, 42 U.S.C. § 1396 *et seq.,* and in particular, the word "overpayment" in 42 U.S.C. § 1396b(d). To comprehend the arguments of the parties it is worthwhile to review the workings of the Medicaid program.

The Medicaid program is a retrospective reimbursement system under which the state DPW makes provisional payments to health care providers (in this case, nursing homes) at "interim rates" established by the Massachusetts Rate Setting Commission. These rates are based on the amount to which the provider was entitled in previous years. Each quarter, HHS reimburses the Commonwealth at approximately 50% of the interim rate. This reimbursement is called Federal Financial Participation (FFP). Following the close of the rate year, the Commission establishes a "final rate" based upon the actual costs of the provider during that year. If the final rate exceeds the interim rate, then the health care provider is entitled to receive further payment from the Commonwealth. If, on the other hand, the final rate is lower than the interim one, the Commonwealth is entitled to recover the difference. The issue at hand is whether the Commonwealth should be required to refund HHS its share of this excess whenever the situation occurs, or whether its obligation to refund HHS's

were withdrawn at the hearing.

share arises only after it obtains repayment by the health care provider.

Surprisingly, there does not appear to be any case law on this subject, and the Medicaid Act itself is ambiguous. The applicable provision, 42 U.S.C. § 1396b(d), states in pertinent part as follows:

(d)(1) Prior to the beginning of each quarter, the Secretary shall estimate the amount to which a state will be entitled under subsections (a) and (b) of this section for such quarter ....

(2) The Secretary shall then pay to the state ... the amount so estimated, *reduced or increased to the extent of any overpayment* or underpayment which the Secretary determines was made under the section to such state for any prior quarter and with respect to which adjustment has not already been made under this subsection. Expenditures for which payments were made to the state under subsection (a) of this section shall be treated as an overpayment to the extent that the state ... has been reimbursed for such expenditures by a third party pursuant to the provisions of its plan in compliance with section 1396a(a)(25) of this title.[2] (emphasis supplied).

(3) The pro rata share to which the United States is equitably entitled, as determined by the Secretary, of the net amount recovered during any quarter by the state ... with respect to medical assistance furnished under the state plan shall be considered an overpayment to be adjusted under this subsection.

A careful reading of the statute exposes the ambiguity. The first sentence of § 1396b(d)(2) permits the Secretary to reduce the amount of FFP to the extent of any overpayment for any prior quarter; § 1396b(d)(3) indicates, however, that certain payments are not to be considered overpayments until the state has recovered the money from the health care provider. Since the term "overpayment" is nowhere defined in the statute nor in the regula-

tions, it is not clear which subsection applies in the present case.

In support of ·its position that § 1396b(d)(2) applies, defendant HHS contends that its obligation to reimburse states for medical expenses only covers expenditures based on the final rate; for it is the final rate that corresponds to what the state has determined to be the proper charge for services. Therefore, defendant argues, when a state pays a provider at an interim rate which is higher than the final rate, and HHS reimburses the state for part of that payment, HHS is entitled to disallow its share of the excess over the final rate as an overpayment since that amount was not properly expended by the state for medical assistance under the state plan. HHS also points to various regulations which establish the authority of the Secretary to disallow improper payments without any condition that the state first recover the money from the provider.

HHS is correct in stating that where there is an overpayment, there need be no recovery by the state before the overpayment can properly be disallowed. However, HHS has not provided any evidence to establish that payment to a state at a higher interim rate than final rate constitutes an overpayment for purposes of § 1396b(d)(2). In the absence of such proof and in light of the policies underlying the Medicaid Act, we do not accept HHS' position.

■ In our view, to place the full burden of unrecoverable Medicaid payments on the states would be inconsistent with the general scheme of the Medicaid program, which was intended to function as a partnership between the states and the federal government. As the Supreme Court explained in *Harris v. McRae*, (1981) 448 U.S. 297, 308–309, 100 S.Ct. 2671, 2683–2684, 65 L.Ed.2d 784:

The cornerstone of Medicaid is financial contribution by *both* the Federal Government and the participating State. Noth-

---

**2.** § 1396a(a)(25) provides in essence that where a third party is legally liable to pay for the care and services available to an individual under the state plan, and this· liability was discovered after the medical assistance was made available, the state must seek reimbursement.

ing in Title XIX as originally enacted, or in its legislative history, suggests that Congress intended to require a participating state to assume the full costs of providing any health services in its Medicaid plan. Quite the contrary, the purpose of Congress in enacting Title XIX was to provide federal financial assistance for all legitimate state expenditures under an approved Medicaid plan. (emphasis added)

Where a state pays a provider at an interim rate in accordance with its state plan, that is a legitimate expenditure for which we believe it is entitled to receive federal financial assistance. If it later turns out through no fault of the state that the interim rate was higher than the final rate, the prior payment does not suddenly become improper, at least not where HHS approved the plan chosen by the state and the interim payment in question was made in compliance with the plan.

In the event that the state recovers the excess payment from the provider, the pro rata share of HHS in that recovery will be considered an overpayment under § 1396b(d)(3). Until such recovery occurs, however, HHS is not entitled to treat its payments to a state at an interim rate in excess of the final rate as overpayments. Therefore there are no grounds for disallowing the $3,703,098 in federal funds to the Commonwealth. Accordingly, it is ordered that defendant's motion to dismiss or in the alternative for summary judgment be denied, that the decision by the Departmental Grant Appeals Board sustaining HHS' disallowance of the $3,703,098 be reversed and set aside, pursuant to 5 U.S.C. § 706, that plaintiff's motion for summary judgment be granted and that judgment be entered for the plaintiff declaring that the plaintiff's interim payments to IDAK et al. nursing homes were not, under the attendant circumstances, overpayments within the meaning of 42 U.S.C. § 1396b(d)(2).