Raymond SHERMAN, individually and on behalf of a class of persons similarly situated, Plaintiff,

v.

Jerry GRIEPENTROG, et al., Defendants.

No. CV–N–90–284–ECR.

United States District Court, D. Nevada.

Oct. 10, 1991.

**1384**

Nevada Legal Services, Inc. by Jon L. Sasser, Carson City, Nev. and Jeanne Finberg (Gill Deford, of counsel), Los Angeles, Cal., for plaintiff.

Richard J. Pocker, U.S. Atty. by Shirley Smith, Asst. U.S. Atty., Reno, Nev., for defendant Louis Sullivan, M.D.

Attorney Gen., State of Nev., Carson City, Nev., for defendants Griepentrog and Ryan.

## ORDER, DECLARATORY JUDGMENT AND PERMANENT INJUNCTION

EDWARD C. REED, Jr., Chief Judge.

### I. BACKGROUND

Plaintiff filed suit on behalf of himself and others similarly situated seeking injunctive and declaratory relief concerning a certain Medicaid policy issued by Secretary Louis Sullivan, M.D. (the Secretary) of the United States Department of Health and Human Services (HHS) and followed by the Nevada Department of Human Resources (NDHR). Medicaid, established in 1965 as Title XIX of the Social Security Act, 42 U.S.C. §§ 1396–1396q, is a cooperative federal-state program designed to provide federal financial assistance to states that choose to reimburse certain costs of medical treatment for the needy. Under the program, eligible recipients of Medicaid may be required to contribute a share of their covered medical costs in an amount related to their income. 42 U.S.C. §§ 1396a(a)(14) and 1396o. At issue generally in this case is the definition of "income" for purposes of computing a recipient's share of the costs that he or she must contribute for medical services rendered on the his or her behalf.

The specific issue raised by the Plaintiff is whether certain payments known as unusual medical expenses, or "UME payments," made to Department of Veterans

Affairs (VA) pensioners [1] who also receive Medicaid benefits should be counted as "income" for purposes of computing the Medicaid recipient's share of costs. Presently, UME payments are counted as income. The Plaintiff argues on behalf of himself and others that UME payments should not be income in this context.

One of the more difficult issues in the case is the fact that Medicaid agencies compute "income" at two different times, for two different purposes, and in two different ways for each recipient. To complicate matters further the term "income" is not defined in the Medicaid statute itself (42 U.S.C. § 1396a et seq.) but instead by reference to the related financial assistance program, Supplemental Security Income (SSI).[2] 42 U.S.C. § 1396a(r)(2).

Initially, when an individual applies for Medicaid the state agency administering the local program must determine whether that applicant is eligible. Eligibility is based on an applicant's income. Therefore, the agency must determine an applicant's "income" during the "eligibility" phase.

Later, once the agency has declared the applicant "eligible" and he or she begins to receive medical care, the Medicaid agency must make a second "post-eligibility" phase calculation of "income" to determine the recipient's share of cost for those services. It is this second "post-eligibility" income determination, a procedure unique to Medicaid, that is at issue in the case. Medicaid does not consider UME payments as income during the "eligibility" phase but *does* consider them as income during the "post-eligibility" phase. Plaintiff's goal in the present action is to reverse this latter policy and require the Secretary, NDHR, and all other state Medicaid agencies within the Ninth Circuit to define UME payments as "not income" for purposes of computing recipients' income during the post-eligibility phase.

Plaintiff has filed motions for substitution of plaintiff (document # 20), for leave

to file first amended class action complaint (document # 17), for class certification (document # 16), and for summary judgment (document # 15). Defendants have filed their own motions for summary judgment (documents # 19 and 25) and have also opposed each of Plaintiff's motions (document # 26). Also before the court is the motion of Burton E. Edwards to intervene in this action (document # 14). Before the court can consider the merits of the cross motions for summary judgment, it must deal with a myriad of procedural issues.

## II. PROCEDURAL ISSUES

### A. *Motion of Burton E. Edwards to Intervene*

Since the filing of this action the original named plaintiff, Mr. Raymond Sherman, has died. The pleadings of both parties inform the court that, although Medicaid claims survive death, Mr. Sherman's claim has become moot. However, the proposed intervenor, Mr. Burton E. Edwards, is a VA pensioner who receives UME payments and also receives Medicaid. Thus, Mr. Edwards has claims typical of the class and would be an appropriate representative. The Plaintiff requests that the court grant Mr. Edwards motion to intervene and allow him to assume the position of class representative.

Under Fed.R.Civ.P. 24(b)(2) a federal court may permit an outside party to intervene in an action, "when an applicant's claim or defense and the main action have a question of law or fact in common.... In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." In other words, the motion must be timely. Three factors are usually weighed when a court decides whether a motion to intervene is timely: (1) the stage of the proceedings, (2) the possible prejudice to other parties, and (3) the reason for the length of the delay. *Alaniz v. Tillie Lewis Foods*, 572 F.2d 657,

---

1. The VA makes UME payments to veterans for medical expenses resulting from non-service related disabilities that exceed 5% of the veteran's total annual pension. 38 U.S.C. § 503(a)(8).

2. The SSI program may be found at 42 U.S.C. § 1381 et seq.

659 (9th Cir.), *cert. denied,* 439 U.S. 837, 99 S.Ct. 123, 58 L.Ed.2d 134 (1978).

■ Defendants argue that the motion to intervene was made over six months after the death of the original class representative Mr. Sherman and thus was untimely. However, the Defendants admit that granting the motion will likely not result in any prejudice to their case. Also, the motion has been made relatively early in the proceedings, at a time prior to the court's ruling on class certification and prior to any rulings on the merits. Given these factors, Mr. Edwards motion must be considered timely.

■ Some authorities, however, have stated that a class action must be dismissed when the claims of the named plaintiff are mooted prior to class certification. *See, e.g., Board of School Commissioners v. Jacobs,* 420 U.S. 128, 95 S.Ct. 848, 43 L.Ed.2d 74 (1975). This reasoning, however, has also been disapproved of in many cases.

> We do not find … the *Jacobs* line of cases persuasive. It is firmly established that where a class action exists, members of the class may intervene or be substituted as named plaintiffs in order to keep the action alive after the claims of the original named plaintiffs are rendered moot.

*Graves v. Walton County Board of Education,* 686 F.2d 1135, 1138 (5th Cir.1982).[3]

Additionally, courts have, on occasion, responded to the mootness of the class representative's claims prior to class certification by allowing or even inviting intervention by another member of the class in order to save the action. *Newberg on Class Actions* § 2.25, at 91–94 (2d. ed. cum. supp. 1991). The court is convinced that a viable case and controversy exists here, and that intervention by Mr. Edwards will allow the action to proceed efficiently. If the court were to deny his motion and dismiss the case, the Plaintiff would file again using Mr. Edwards as the named class representative and both sides would have to duplicate its efforts to this point. In the interest of judicial economy and fairness, plus given the fact that the intervenor's claims share the same issues of fact and law as the other class members, the court grants Mr. Edwards' motion to intervene.

### B. *Plaintiff's Motion for Substitution*

Since the court now grants Mr. Edwards' motion to intervene and believes him to be an adequate class representative, Plaintiff's motion to substitute Ms. Patricia Moore as Mr. Sherman's legal representative is unnecessary and is denied as moot.

### C. *Plaintiff's Motion for Leave to File an Amended Complaint*

Since the court now grants Mr. Edwards' motion to intervene and believes him to be an adequate class representative, the court also grants Plaintiff's motion for leave to file an amended class action complaint. The court shall accept as filed the proposed amended complaint attached to Plaintiff's motion, however, all references to the proposed representative, Ms. Moore, shall be stricken from the complaint.

### D. *Plaintiff's Motion for Class Certification*

A named plaintiff may proceed with a class action if he or she meets four criteria as set forth in Fed.R.Civ.P. 23(a):

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly

---

**3.** Even under the rationale of *Jacobs* the Supreme Court has recognized that dismissal of a class action for mootness prior to class certification is not appropriate where the class claims are such that they are capable of repetition yet may avoid review. *See Sosna v. Iowa,* 419 U.S. 393, 403 n. 11, 95 S.Ct. 553, 559 n. 11, 42 L.Ed.2d 532 (1975); *Gerstein v. Pugh,* 420 U.S. 103, 110–11 n. 11, 95 S.Ct. 854, 861 n. 11, 43 L.Ed.2d 54 (1975). Since the proposed class is very fluid, and many of its members are sick and/or elderly, the court is convinced that the present action is just such a case.

and adequately protect the interests of the class.

There is no dispute between the parties as to requirements (2) through (3). However, the defendants claim that the class is not so numerous that joinder is impracticable. In attacking this requirement (often referred to as the "numerosity" requirement) the Defendants also contest Plaintiff's definition of the class. The court will consider these two points below.

### 1. *The class definition*

The definition of the proposed class offered by Plaintiff in his motion for certification reads as follows:

> All low-income beneficiaries of needs-based programs of the Department of Veterans Affairs residing within the geographical jurisdiction of the Ninth Circuit Court of Appeals who receive, have received or who may in the future receive Medicaid, and who are or will be liable to pay a share of cost, based on monies received from the Veterans Administration (VA) as reimbursement for unusual medical expenses.

Defendants argue that a class defined by reference to the geographical area of the Ninth Circuit is improper. The Defendants advance two major points in support of their position. First, they argue, the Plaintiff has presented no evidence that any state in the Ninth Circuit (except for Nevada) presently counts VA UME payments as income during the post-eligibility phase. Second, Defendants claim that this court does not have the jurisdiction to order the circuit-wide relief sought by the class.

Defendants' argument, that no evidence exists that any state other than Nevada imposes the policy challenged in this case and therefore a circuit-wide class is improper, is without merit. The guideline at issue in this case was promulgated by the Health Care Financing Administration (HCFA), the agency within HHS responsible for running the Medicaid program. HCFA issued to the states Transmittal 90–32 in February 1989 which describes the very policy challenged here.[4] Thus, the policy is nationwide in scope and effect. Defendants argue, however, that a state might purposely ignore the policy and risk forfeiture of federal funds, or alternatively, a state may simply be ignorant of the provision. Such speculation seems unfounded, but even assuming such a state did exist within the Ninth Circuit (and the federal defendants, who are in a position to know, offer no evidence that one does) this reasoning is flawed. First, there is no guarantee that a state not now abiding by the federal mandate will not adopt it in the future. The proposed class includes future claimants. If the court accepts Defendants' logic, and the policy were struck down, it would reach the bizarre result of making a practice illegal in some states now, while leaving the door open for other states to implement it in the future. Second, the class, by definition, excludes those individuals who are not subjected to the challenged policy. If a state, in fact, does not now follow this policy Medicaid beneficiaries receiving VA UME payments are not presently within the class definition. Thus, certification of the class by this court would not at present affect such a state.

█ Defendants also argue that this court lacks jurisdiction to order the circuit-wide relief requested by the Plaintiff. However, the relief that the Plaintiff seeks is injunctive and declaratory. Contrary to Defendants' assertion the complaint seeks purely equitable remedies and is properly considered for certification under Fed. R.Civ.P. 23(b)(2). The Supreme Court has said that nothing limits the geographical scope of a class action brought under this rule. *Califano v. Yamasaki*, 442 U.S. 682,

---

4. The directive may be found at § 3701.2 of the State Medicaid Manual issued by HCFA under the heading "POST–ELIGIBILITY". It reads in relevant part:

> Total income also includes payments made directly to the individual under a Federal, State, or local government program for medical or remedial care or social services which are not considered to be income for purposes of eligibility, e.g. Veterans Administration payments ... resulting from unusual medical expenses.

> The same policy has been proposed as an HCFA rule. *See* 53 Fed.Reg. 32,252 (Aug. 24, 1988).

702, 99 S.Ct. 2545, 2558, 61 L.Ed.2d 176 (1979). Specifically, courts have certified circuit-wide or multi-state classes where not all of the included states were before the court. *See, e.g., Lopez v. Heckler*, 725 F.2d 1489 (9th Cir.), *vacated and remanded in light of new legislation*, 469 U.S. 1082, 105 S.Ct. 583, 83 L.Ed.2d 694 (1984); *Darling v. Bowen*, 685 F.Supp. 1125 (W.D.Mo.1988), *aff'd*, 878 F.2d 1069 (1989), *cert. denied, Stangler v. Darling*, — U.S. ——, 110 S.Ct. 1782, 108 L.Ed.2d 783 (1990).

The facts of *Darling* are very similar to the present case. In *Darling*, a widow brought a Rule 23(b)(2) class action suit against HHS and the Missouri Department of Social Services with respect to the treatment of Congressionally authorized increases in SSI widow's and widower's benefits for purposes of Medicaid eligibility. The plaintiff had asked the court to declare that the Secretary of HHS had misconstrued Congressional intent when he differentiated between states that used SSI eligibility factors to trigger Medicaid entitlement and those that did not.

The proposed order in *Darling* applied to many states, not just Missouri, the only state before the court. Defendants argued that the multi-state class was improper because the other states were not represented in court. The District Court disagreed:

> The question presented focuses on Federal rather than state law, although the impact of the court's ruling may vary....
>
> Defendants argue that there is a defect in [the] multi-state class, in that only the Missouri state agency is before the court (in addition to the Federal defendants). The same procedure was used, however, in *Lynch v. Rank*, 604 F.Supp. 30 (N.D.Cal.1984), *aff'd*, 747 F.2d 528 (9th Cir.1984). The basic contention is that the Secretary has ... supplied unsound direction to the ... states. As in *Lynch v. Rank*, this appears to be a problem

that can be dealt with in the absence of representation of each state.

*Darling*, 685 F.Supp. at 1127. The court agrees with this reasoning.

Here, as in *Darling*, the court deals with a policy formulated and distributed to the states by the Secretary. If this court finds the policy to be contrary to law, it will order that the federal defendants withdraw it, and the states disregard it. Thus, the court finds no problem, jurisdictional or otherwise, in allowing the Plaintiff to define the class geographically as the Ninth Circuit. The court, therefore, concludes that the Plaintiff's definition of the proposed class is adequate.[5]

### 2. *Impracticability of Joinder*

■ As explained above, Defendants claim that Plaintiff has not adequately demonstrated to the court that the class is so numerous that joinder is impracticable as they are required to do under Rule 23(a)(1). The burden of demonstrating that the elements of Rule 23(a) are satisfied is on the party who seeks certification. *Doninger v. Pacific Northwest Bell, Inc.*, 564 F.2d 1304, 1308 (9th Cir.1977). The party may not rest simply on the allegations contained in the complaint but must provide a basic accounting of the facts. *Id.* at 1309. The decision to certify the class, however, is one within the discretion of the trial court. *Id.; Yamamoto v. Omiya*, 564 F.2d 1319, 1325 (9th Cir.1977).

Each class certification decision regarding the "numerosity" requirement is unique. Classes containing fewer than ten members have been certified, *see, e.g., Cross v. National Trust Life Insurance Co.*, 553 F.2d 1026, 1030 (6th Cir.1977), while classes larger than 300 have been denied, *see, e.g., Utah v. American Pipe & Constr. Co.*, 49 F.R.D. 17 (C.D.Cal.1969). Thus, "the absolute number of class members is not the sole determining factor." *Jordan v. County of Los Angeles*, 669 F.2d 1311, 1319 (9th Cir.), *vacated on other grounds*, 459 U.S. 810, 103 S.Ct. 35, 74

---

**5.** A class defined by the geographical boundaries of the Ninth Circuit has been affirmed on at least one other occasion as well. *See Lopez v.* *Heckler*, 725 F.2d 1489, 1194 (9th Cir.), *vacated and remanded in light of new legislation*, 469 U.S. 1082, 105 S.Ct. 583, 83 L.Ed.2d 694 (1984).

L.Ed.2d 48 (1982). Nor does the fact that the moving party is not sure of the exact number of members bar class certification. *Lund v. Affleck*, 388 F.Supp. 137, 139–40 (D.R.I.1975). "It is not necessary that the members of the class be so clearly identified that any member can be presently ascertained." *Carpenter v. Davis*, 424 F.2d 257, 260 (5th Cir.1970). The court may draw a reasonable inference of the size of the class from the facts before it. *Senter v. General Motors Corp.*, 532 F.2d 511, 523 (6th Cir.), *cert. denied*, 429 U.S. 870, 97 S.Ct. 182, 50 L.Ed.2d 150 (1976); *see also Gay v. Waiters' & Dairy Lunchmen's Union*, 549 F.2d 1330, 1332 (9th Cir.1977).

One must keep in mind that the task of the court here is to determine the *impracticability* of joinder, not simply count heads. Thus, other indicia of impracticability besides the pure "numerosity" of the class are relevant:

> [W]here a class is large in numbers, joinder will usually be impracticable.... Where the class is not so numerous, however, the number of class members does not weigh as heavily.... In the latter situation, other factors such as the geographical diversity of class members, the ability of individual claimants to institute separate suits, and whether injunctive or declaratory relief is sought, should be considered in determining impracticability of joinder.

*Jordan*, 669 F.2d at 1319 (citations omitted). Also, the joinder of unknown future individuals is inherently impracticable. *Id.* at 1320.

■ Turning to the facts of the case at bar, it is true that the Plaintiff has not provided figures to the court which would indicate the exact number of individuals who would come under the class definition. However, the court is satisfied that the Plaintiff has demonstrated impracticability of joinder in this action. There are tens of thousands of elderly or disabled VA pensioners in the Ninth Circuit who also receive Medicaid. Although the Plaintiff does not presently know how many of these individuals also receive UME payments, such data is unnecessary. The class is composed of poor and elderly or disabled individuals disbursed over a wide geographical region who could not without great hardship bring multiple lawsuits. Additionally, no one can presently know how many of these or other persons will fall under the class definition in the future. Given these factors, class certification is proper even for small classes.[6] The court will certify the class.

## III. THE MOTIONS FOR SUMMARY JUDGMENT

There are no material facts in dispute between the parties and the court has read all briefs filed by counsel. The court will now, therefore, consider the merits of the cross motions for summary judgment.

In *Summy v. Schweiker*, 688 F.2d 1233 (9th Cir.1982), the court found that VA UME payments were third-party payments for medical care and services provided to the pensioner and thus were not income for the purpose of determining SSI eligibility. Since what is not income for purposes of SSI eligibility is also not income for Medicaid eligibility purposes, *see* 42 U.S.C. § 1396a(r)(2), the Secretary, and the two District Courts that have ruled on the issue, have extended the reasoning in *Summy* and recognized that VA UME payments are not income for purposes of Medicaid eligibility. *See Peffers v. Bowman*, 599 F.Supp. 353 (D.Idaho 1984); *Mitson v. Coler*, 674 F.Supp. 851 (S.D.Fla. 1987); Soc.Sec.Admin. Program Operations Manual System § SI 00830.166B.2.a (applicable only within the Ninth Circuit). The Plaintiff asks the court to extend this reasoning to *post*-eligibility income determinations as well.

---

6. In *Jordan* the Ninth Circuit reversed the District Court's denial of class certification and certified a class consisting of three groups numbering 39, 64, and 71 respectively. 669 F.2d at 1319. Although the decision was mostly based on "other indicia of impracticability" such as geographical diversity, the poverty of the members, and the inclusion of future members, the court indicated that *the numbers alone* would probably have been sufficient in that case. *Id.*

### A. *Standard of Review*

The statute that requires the states to follow federal income regulations with respect to Medicaid eligibility and post-eligibility determinations can be found at 42 U.S.C. § 1396a(a)(17). It is part of the Social Security Act, a statutory web "almost unintelligible to the uninitiated," *Friedman v. Berger*, 547 F.2d 724, 727 n. 7 (2d Cir.1976), *cert. denied*, 430 U.S. 984, 97 S.Ct. 1681, 52 L.Ed.2d 378 (1977). The Supreme Court noted that "the Social Security Act is among the most intricate ever drafted by Congress" and is "Byzantine" in construction. *Schweiker v. Gray Panthers*, 453 U.S. 34, 43, 101 S.Ct. 2633, 2640, 69 L.Ed.2d 460 (1981). One District Court simply noted that § 1396a(a)(17) is "a virtually impenetrable thicket of legalese and gobbledygook." *Lamore v. Ives*, Civil No. 90–92, slip op. at 4 n. 2, 1991 WL 193601 (D.Maine 1991).

For this reason, the Supreme Court has ruled that in subsection (B) of § 1396a(a)(17) Congress granted the Secretary exceptionally broad discretion to interpret the statute.[7] *Schweiker*, 453 U.S. at 43, 101 S.Ct. at 2640; *Herweg v. Ray*, 455 U.S. 265, 274, 102 S.Ct. 1059, 1066, 71 L.Ed.2d 137 (1982). Because Congress has entrusted the primary responsibility of interpreting the statutory term "available income" to the Secretary rather than to the courts, his definition is entitled to "legislative effect." *Herweg*, 455 U.S. at 275, 102 S.Ct. at 1066. A court may disturb the Secretary's interpretation only if it has found that the Secretary abused his discretion or if the Secretary's decision was arbitrary or capricious or otherwise not in accordance with the law. *Schweiker*, 453 U.S. at 44, 101 S.Ct. at 2640; *Herweg*, 455 U.S. at 275, 102 S.Ct. at 1066; *State of Washington v. Bowen*, 815 F.2d 549, 553 (9th Cir.1987). However, since the Secretary's interpretations are without actual force of law, the court must consider them with caution. *Vista Hill Foundation, Inc. v. Heckler*, 767 F.2d 556, 559–60 (9th Cir.

1985). The court should not defer to the Secretary where his interpretation conflicts with the Medicaid statute or regulations. *Id.* at 560.

### B. *Analysis*

The court can discern no basis for treating VA UME payments as income in the post-eligibility phase but not during the eligibility phase. It is clear that the Secretary considers the eligibility and post-eligibility phases to be entirely separate events. *See* 53 Fed.Reg. 32,252 (Aug. 24, 1988). However, the Medicaid statutory and regulatory framework, court decisions, and the meaning of the word "income" for purposes of the Social Security Act require the court to rule that the Secretary and the states within the Ninth Circuit may not consider UME payments to be income for any Medicaid purpose. Additionally, if the court were to adopt the Secretary's view, it would perpetuate inconsistent treatment.

#### 1. *The Medicaid statute itself*

The court would be hard-pressed to find a more difficult statute to interpret than 42 U.S.C. § 1396a. It reads, in pertinent part:

(a) Contents

A State plan for medical assistance must ... (17) ... include reasonable standards ... for determining *eligibility for and the extent of medical assistance under* the plan which ... (B) provide for taking into account only such income and resources as are, as determined in accordance with standards prescribed by the Secretary, *available to the applicant or recipient and* (in the case of any applicant or recipient who would, except for income and resources, be eligible for aid or assistance in the form of money payments under any plan of the state approved under subchapter I, X, XIV, or XVI, or part A of subchapter IV, or to have paid with respect to him [SSI] benefits under subchapter XVI of this chapter) *as would not be disregarded ... in*

---

7. Subsection (B) provides that states must use a method for taking into account an applicant's or recipient's "available" income "as determined in

accordance with standards prescribed by the Secretary." 42 U.S.C. § 1396a(17)(B).

*determining his eligibility* for such aid, assistance, or benefits....

(Emphasis added). The parties focus on the emphasized portions and the long parenthetical phrase in the middle of the passage.

Plaintiff argues that the plain meaning of the statutory language requires the Secretary to use the same income criteria during both the eligibility and post-eligibility phases. Both parties agree that Medicaid derives its distinction between eligibility and post-eligibility from the passage "eligibility for and the extent of medical assistance under." That is, "extent of assistance under" refers to the post-eligibility determination.

Thus, the Plaintiff focuses on the portion of the statute which instructs states to only take into account "available" income that "would not be disregarded ... in determining eligibility." Plaintiff argues that, according to this passage, if Medicaid disregards a payment (deems it to be not available to the recipient) during the eligibility phase it must disregard that payment for post-eligibility purposes as well. Defendant replies that, even if this is true, the parenthetical phrase preceding "as would not be disregarded ..." modifies the phrase after it and thus makes the Plaintiff's construction *only applicable to those individuals who fit the description contained within the parentheses.* Defendants claim that the Plaintiff is not such an individual and, therefore, the Plaintiff's proposed construction of the statute does not apply to him.

Only one court has ever attempted to interpret the complicated passages cited here. In *Lamore v. Ives,* Civil No. 90–92, slip op. (D.Maine 1991), an unreported District Court case, Judge Hornby attempted to unravel the exact language with which the parties now struggle.

The Plaintiff in *Lamore,* a class of VA and Medicaid beneficiaries, argued that § 1396a(a)(17) required state Medicaid agencies to treat VA "Aid and Attendance" benefits the same way during post-eligibility income determinations as they had during the eligibility phase. The court did not explicitly agree or disagree with that construction but instead focused on the material contained in the parentheses in the middle of the statute. The court ruled that the passage that required Medicaid to not count as "available" any income that was disregarded during the eligibility determination *only applied to those individuals listed in the parenthetical,* namely:

> ... any applicant who would, except for income and resources, be eligible for aid or assistance ... under any plan ... approved under subchapter[s] I, X, XIV, or XVI, or part A of subchapter IV, or to have paid with respect to him [SSI] benefits.... [8]

42 U.S.C. § 1396a(a)(17). Since the plaintiff in *Lamore* received Medicaid benefits under 42 U.S.C. § 1396n, the so-called "waiver" program, and not under one of the plans listed in the passage, the court ruled against the Plaintiff.

Since the named Plaintiff here also receives Medicaid benefits under the "waiver" program, the Defendants ask that this court follow the decision in *Lamore.* Although this court agrees with the reasoning expressed in *Lamore,* it does not concur in the result. The District Court of Maine failed to consider the import of the language "any applicant or recipient who would, *except for income and resources,* be eligible for aid."

The class of plaintiffs includes all VA pensioners who do receive (or will receive) UME payments and Medicaid and who are (or will be) assessed a share of their medical costs. If an individual has enough income that he or she will be assessed a share of the cost during the post-eligibility phase, that individual is, presumably, not eligible for one of the listed cash benefit programs because his or her income is too high. Thus, the individual is an applicant or recipient who would, *except for income and resources,* be eligible for aid under

---

**8.** The plans referred to in the passage are more commonly known as old age assistance; assistance to the blind; aid for the permanently and totally disabled; SSI for the aged, blind, and disabled; and aid to families with dependent children. *Lamore,* slip op. at 5.

one of the listed programs. The statute, therefore, includes all recipients who do receive aid under the cash assistance programs *and* those who would receive such aid, but for their income and resources. Thus, the statutory language expressly *includes* the Plaintiff and those similarly situated, it does not exclude them.[9]

■ Section 1396a(a)(17) requires the states to exclude from income during the post-eligibility phase those items excluded during the eligibility phase. Since the Secretary's transmittal now embodied at section 3701.2 of the State Medicaid Manual requires that states count VA UME payments as income during the post-eligibility phase but not during the eligibility phase, it violates the express mandate of the Medicaid statute.

### 2. *The UME case law and the meaning of "income"*

The reasoning of the court above accords with the few cases that have considered the issue of whether VA UME payments are income. Although prior to today all such cases were decided in the context of eligibility determinations, the court is convinced that the policies and concerns represented by those decisions may be equally applied to the post-eligibility context as well.

The Ninth Circuit in *Summy* based its decision to exclude UME payments from the SSI definition of "not income" on the meaning of the word income. Judge Sneed clearly recognized that one can view UME payments two different ways:

> The issue before us resembles those familiar examples of Gestalt psychology one encounters in school. Viewed one way the appellee's pension was augmented with funds which when received were as spendable as any other dollar of the pension. Viewed another way the appellee was reimbursed for expenditures previously made over which there was little control and which could not have been used to meet the basic needs for food, clothing and shelter. Neither view is "wrong." Our choice is simply between the interpretation of the Secretary, to which we should accord substantial weight, and that which we believe best advances the purposes of the SSI program.
>
> The latter is our choice....

*Summy*, 688 F.2d at 1235 (citation and quotation marks omitted). The court agrees with, and is bound by, the reasoning in this case.

The Defendants' arguments in the present action are sophistic and convoluted. When the District Court of Florida applied *Summy* to the same arguments made in the context of Medicaid eligibility it stated that, "[w]hile the UME provision is arguably an income adjustment provision, the Court does not find meaningful the distinction between a reimbursement of medical expenses and an adjustment to income.... The Secretary's argument in this case is one of mere semantics." *Mitson*, 674 F.Supp. at 855. The same is true here. UME payments are, pure and simple, reimbursements for out-of-pocket unusual medical expenditures; they are not "income."

### 3. *The implications of the Secretary's view*

If the court adopted the Secretary's definition of income for Medicaid post-eligibility purposes it would perpetuate inconsistent and burdensome treatment of recipients. First, by counting UME payments as

---

**9.** The court believes that the language in the parentheses exists to insure that Medicaid agencies and the agencies that institute the cash assistance programs treat recipients consistently. If one reads the passage (as Defendants suggest) as limiting the statute's overall reach to individuals who receive cash assistance, the section loses most of its meaning. Since the post-eligibility phase exists to determine a recipient's share of cost, and since most (if not all) of the low- or no-income individuals who receive cash assistance will be liable under Medicaid for either a low share of cost or none at all, there would be little need for a statute that focused on such individuals' post-eligibility treatment. Any statute aimed at the computation of an individual's post-eligibility income must be concerned with *all* persons liable for a share of cost, especially those individuals, like the Plaintiff, whose income level is high enough that their share of cost will be substantially affected by the method of income computation. The court, therefore, remains confident that its interpretation of the statute is correct.

income during the post-eligibility phase but not during the eligibility determination, Medicaid gives with one hand but takes with the other. From the point-of-view of the recipient who receives both VA UME payments and Medicaid, it is of little help to him or her that Medicaid does not count the payments as income during the eligibility phase if the Secretary will then force the same recipient to pay a share of cost equal to that individual's other income *plus* the amount of the UME payment. To the recipient, *it is as if the UME was never paid.* In fact, it is worse: in the absence of a VA pension, a recipient might be able to charge to the state Medicaid agency the exact same care provided under the UME payment provision. As the court stated in *Mitson*, "[t]he inclusion of Plaintiff's additional [VA pension] payments in income would frustrate and perhaps nullify the effect of the UME provision." 674 F.Supp. at 856.

An example will help clarify the situation. Assume that a Medicaid recipient who also receives UME payments has a pre-UME income of $1,000 in 1990. The recipient pays, out-of-pocket, $200 dollars for unavoidable unusual medical expenses in that year, thus leaving the recipient $800 to spend as normal income. The same individual applies for and receives a $200 UME payment from the VA as reimbursement for the unusual medical expenses. In the same year the recipient incurs Medicaid-covered medical expenses. Under present procedure, Medicaid will compute the recipient's 1990 income as $1200 (income from all other sources + the UME payment) *not $1000*, and thus this recipient will be liable for a share of cost for the Medicaid-covered services that is *$200 higher* than one based on the income the recipient actually had available to spend. Thus, financially it is as if the recipient was never paid for the first $200 of medical expenses.

Under the present system, those who receive VA UME payments are penalized for receiving them, and those who are eligible for but who do not yet receive UME payments are discouraged from applying for them. Ironically, although the Secretary resists the court's conclusion, excluding UME payments from income during the post-eligibility phase would allow pensioners to freely claim such payments from the VA for medical services that might otherwise be charged to Medicaid. Thus, the change would actually help serve the policy set forth by the Secretary that Medicaid is a payer of last resort.

Second, Medicaid treats classes of recipients who receive third-party payments from private health insurers differently during the post-eligibility phase than those who receive third-party UME payments. During the post-eligibility determination Medicaid must disregard payments by third-parties for medical costs incurred by Medicaid recipients who receive care either under 42 U.S.C. § 1396a(a)(17) or the "waiver" program of § 1396n. 42 U.S.C. § 1396a(r)(1). Thus, Medicaid does not count third-party private insurance payments for incurred medical expenses as income during the post-eligibility phase.

However, in the Ninth Circuit VA UME payments are clearly third-party payments for medical care and services. *Summy*, 688 F.2d at 1234–35. The court finds no basis for distinguishing between UME reimbursement payments and other forms of third-party payments for incurred medical expenses.[10] Therefore, the Secretary must treat the class of Medicaid recipients who receive a share of their medical costs from VA UME payments identically to the class of Medicaid recipients who have a share of their medical costs paid by other third parties.

### 4. The Administrative Procedure Act

Since the court today rules for the Plaintiff on other grounds, it fails to reach the issue of whether the Secretary's transmittal violated the rulemaking requirements of the Administrative Procedure Act (5 U.S.C. § 551, et seq.).

---

**10.** The only difference is that UME payments are made directly to pensioners for out-of-pocket costs while most other types of third-party payments are made directly to health care providers for the costs of services rendered. Economically, there is no difference.

### 5. *Attorneys Fees*

The court will consider Plaintiff's request for reasonable attorneys fees pursuant to 28 U.S.C. § 2412 and 42 U.S.C. § 1988 in a future order.

## IV. ORDERS OF THE COURT

IT IS, THEREFORE, HEREBY ORDERED that the motion of Mr. Burton Edwards to intervene (document # 14) is hereby GRANTED. Plaintiff's motion for substitution of plaintiff (document # 20) is hereby DENIED AS MOOT.

IT IS FURTHER ORDERED that Plaintiff's motion to file an amended class action complaint (document # 17) is hereby GRANTED. The clerk of the court shall DETACH AND FILE the proposed first amended class action complaint found attached to that motion (document # 17) but all references to the proposed representative, Patricia Moore, found in the plaintiff caption, paragraphs 1, 14, 19, 51, 53, and in the prayer for relief shall be STRICKEN from the complaint.

IT IS FURTHER ORDERED that the caption regarding the Plaintiff on all documents is AMENDED to read as follows: "BURTON E. EDWARDS, individually and on behalf of a class of persons similarly situated, Plaintiff." All further documents filed in this matter shall bear such caption.

IT IS FURTHER ORDERED that Plaintiff's motion for class certification (document # 16) is hereby GRANTED.

IT IS FURTHER ORDERED that Plaintiff's motion for summary judgment (document # 15) is hereby GRANTED.

IT IS FURTHER ORDERED that Plaintiff's request for a DECLARATORY JUDGMENT (contained within the amended complaint attached to document # 17) that the Defendants have acted in arbitrarily and in contravention of Medicaid law in adopting a written policy that considers unusual medical expenses paid to members of the Plaintiff class pursuant to 38 U.S.C. § 503(a)(8) as income during the post-eligibility share of cost determination is hereby GRANTED.

IT IS FURTHER ORDERED that Plaintiff's request for a PERMANENT INJUNCTION (contained within the amended complaint attached to document # 17) is hereby GRANTED. Defendants, their officers, agents, servants, employees and attorneys are RESTRAINED AND ENJOINED from treating unusual medical expenses paid to members of the Plaintiff class pursuant to 38 U.S.C. § 503(a)(8) at any time in the past, present, or future as income during the post-eligibility share of cost determination. Defendants will issue directives and/or regulations consistent with this order.

THE CLERK SHALL ENTER JUDGMENT ACCORDINGLY.