**Burton E. EDWARDS, individually and on behalf of a class of persons similarly situated, Plaintiff,**

**v.**

**Jerry GRIEPENTROG, et al., Defendants.**

No. CV–N–90–284–ECR.

United States District Court, D. Nevada.

July 31, 1992.

Order on Motion to Amend Oct. 23, 1992.

Nevada Legal Services, Inc., Carson City, Nev., and Jeanne Finberg, Los Angeles, Cal., for plaintiff.

Richard J. Pocker, U.S. Atty., Reno, Nev., for defendant Louis Sullivan, M.D.

Gerald E. Weis, Deputy Atty. Gen., State of Nev., Carson City, Nev. for Griepentrog & Ryan.

## ORDER

EDWARD C. REED, Jr., District Judge.

Plaintiff has filed a motion to enforce the judgment in this case (document # 71). Plaintiff alleges that the Federal Defendants in this case have subverted and disobeyed both the letter and the spirit of the court's October 10, 1991 granting the permanent injunction. See *Sherman v. Griepentrog*, 775 F.Supp. 1383 (D.Nev.1991). The court agrees. Whether by overt instruction or simple acquiescence, the Federal Defendants have allowed at least one state, Idaho, to completely render moot the holding in this case. Without an additional court order,[1] the Federal Defendants and/or the states within the Ninth Circuit would be able to effectively reverse the previous decision of this court by instituting a policy that, in itself, violates Medicaid law.

In the court's October 10 decision, it ruled that Department of Veterans Affairs Unusual Medical Expense ("VA UME") payments to Medicaid recipients could not be counted as "income" during the Medicaid post-eligibility share of cost determination. *Id.* at 1394. The decision was based upon three bases: (1) the result was required by the Medicaid statute itself; (2) the meaning of the word "income" in the Medicaid case law; and (3) the fact that the Defendants' position would result in burdensome and inconsistent treatment of recipients leading to a complete nullification of the UME payment benefit. *Id.* at 1390–93.

The state of Idaho has seized upon a piece of dicta contained within the third basis outlined above to completely subvert the court's order.[2] At the end of the section discussing inconsistent and burdensome treatment of UME and Medicaid recipients the court states:

> The court finds no basis for distinguishing between UME reimbursement payments and other forms of third-party payments for incurred medical expenses. Therefore, the Secretary must treat the class of Medicaid recipients who receive a share of their medical costs from VA UME payments identically to the class of Medicaid recipients who have a share of their medical costs paid by other third parties.

*Id.* at 1393 (footnote omitted). The Idaho policy takes this passage out of context and proceeds to require UME beneficiaries to turn over their UME payments to the state Medicaid agency as third party *liability* ("TPL") payments.

TPL regulations require states to seek reimbursement for Medicaid services from legally liable third parties. The effect of the Idaho policy is to put the UME beneficiary in the same position he or she was in prior to this litigation—UME beneficiaries in Idaho are not be able to put their payments towards reimbursement of past out-of-pocket unusual medical expenses (the avowed purpose of VA UME payments) but instead must put them towards their present or future Medicaid expenses. This is the exact practice that Plaintiff's suit sought to stop.

---

1. The Federal Defendants argue that the court does not have the authority to consider the legality of the state of Idaho's new third party liability payment scheme pertaining to Department of Veterans Affairs unusual medical expense payments (see discussion below). They cite *Phoenix Baptist Hosp. and Medical Center, Inc. v. U.S.*, 937 F.2d 452 (9th Cir.1991). That case has no bearing on the instant motion. Also, a court always has the authority to consider the acts of parties that directly contradict one of its legal orders.

2. The Plaintiff argues that the Idaho policy is based on the "behind-the-scenes" urgings of the Federal Defendants. The court cannot determine whether or not this is true or whether any other states have implemented policies like the Idaho one. However, it makes no difference whether or not the Health Care Financing Administration actually created the Idaho policy or not since the Federal Defendants, as compliance overseers of the Medicaid program, are required to abide by the court's order of permanent injunction. The Federal Defendants apparently realize that they are to monitor the Ninth Circuit states' compliance with the order as Mr. Wallner's June 25, 1992 letter to the Director of the Oregon program indicates.

## I. *Third Party Liability Payments Under the Medicaid Program*

To see how the Idaho policy contradicts the permanent injunction, and why clever Medicaid administrators chose to seize upon the court's language quoted above, the court must examine the law pertaining to TPL payments. Section 1396a(a)(25) of Title 42 requires state Medicaid agencies to "take all reasonable measures to ascertain the legal liability of third parties (including health insurers) to pay for care and services available under the plan...." When the state finds a legally liable third party "the state or local agency will seek reimbursement for such assistance to the extent of such legal liability." 42 U.S.C. § 1396a (a)(25)(B). Beneficiaries legally capable of making assignments must assign their right to payments from third parties who come under the auspices of § 1396a(a)(25). 42 U.S.C. § 1396k(a)(1)(A). The purpose of § 1396a(a)(25) is clear: "§ 1396a(a)(25) provides in essence that where a third party is legally liable to pay for the care and services available to an individual under the state plan, and this liability was discovered after the medical assistance was made available, the state must seek reimbursement." *Com. of Mass. by Dept. of Public Welfare v. Heckler*, 576 F.Supp. 1565, 1568 n. 2 (D.Mass.), *rev'd on unrelated grounds*, 749 F.2d 89 (1st Cir.1984), *cert. denied*, 472 U.S. 1017, 105 S.Ct. 3478, 87 L.Ed.2d 613 (1985).

Under the TPL payment scheme a "third party" is defined as "any individual, entity or program that is or may be liable to pay all or part of the expenditures for medical assistance furnished under a State plan."

42 C.F.R. § 433.136(3). Thus, according to the statutory and regulatory TPL payment law cited above, a state may only attempt to collect "reimbursement" against a "third party" who "is or may be" "legally liable" for "medical assistance furnished under a State" Medicaid plan.

The Medicaid/UME recipient is obviously not a "third party" since he or she is the direct recipient of services. Thus, if the VA UME program is not a "third party," i.e. legally obligated to pay now or in the future for Medicaid-rendered services, the Idaho policy cannot stand.

When one considers why and how VA pensioners receive UME payments it quickly becomes apparent that the VA's UME payment program is not a "third party."[3] VA pensioners receive UME payments as *reimbursement* for previously incurred *out-of-pocket* medical expenses. They do not receive the payments as reimbursement for *Medicaid* services.[4]

It seems obvious to the court that the TPL payment system was instituted for one very good reason: when a third party is legally liable to provide payment for a service that Medicaid has provided or will provide, Medicaid should not be forced to foot the entire bill. It is simply a contribution system whereby two or more legally responsible providers (or bill-payers) must split the costs of service. It furthers the Medicaid mandate of being only a payor of last resort.

However, in the UME context, Medicaid is not a payor of any kind as it did not pay for any part of the service or care for which the VA UME was paid—the patient did.[5] Why would the TPL payment scheme

---

**3.** At least one Judge believes that the entire TPL payment requirement was instituted simply for the purpose of collecting payments from third-party health care insurers. See *Herweg v. Ray*, 619 F.2d 1265, 1281 (8th Cir.1980) (J. McMillian concurring in part and dissenting in part), *rev'd on unrelated grounds*, 455 U.S. 265, 102 S.Ct. 1059, 71 L.Ed.2d 137 (1982).

**4.** The Department of Health and Human Services' ("HHS's") own internal written guidelines declare that a "third party" is someone liable for a recipient's health care under title XIX of the Social Security Act. *Bowen*, 661 F.Supp. at

1551–52 (citing HHS's Medical Assistance Manual Sec. 6–50–21(A)). The VA pays UME payments to reimburse pensioners for the out-of-pocket expenses of certain medical care, not for medical assistance received under title XIX of the Social Security Act.

**5.** The parties agree that to the extent that a UME payment is given for an "incurred medical expense" under Medicaid, it is not really the type of UME discussed in this order. Under this limited scenario, the UME presumably is paid for services actually provided for by Medicaid. This, of course, should not occur if the VA

provide that the state agency could seek "reimbursement" for services that *it did not pay for?* Obviously, it does not.[6] Thus, a state cannot require a recipient to assign his or her UME check to the state.

To rule otherwise would allow states to accomplish the very thing that this lawsuit set out to stop: counting UME payments as income during the post-eligibility share of cost determination. This is because the services towards which the assigned UME payments would be put are not the same services for which the VA paid the UME. The services represented by the UME reimbursement to the pensioner were paid for by the pensioner. If later the state requires the pensioner to assign that UME payment to the state Medicaid agency to help pay for new Medicaid services separate and apart from the ones covered by the UME payment, it would achieve the exact same result as if it counted the UME payment as income during the post-eligibility phase and applied it towards the recipient's share of cost. That is why the Idaho plan is a direct violation of the permanent injunction.

II. *The Idaho Policy Misconstrues the Court's Holding*

It is also apparent from Idaho Department of Health and Welfare, Bureau of Welfare Programs Circular No. 91–71 (March 19, 1992) that the policy of counting VA UME payments as TPL payments is not based so much on a careful analysis of the TPL statutory and regulatory scheme as it is on a basic misstatement of the court's original ruling. In the first full paragraph on page one of that Circular the Idaho Bureau states: "A U.S. District Court injunction prevents us from counting the UME increase toward patient liability. *The Court also said the UME allowance can be recovered as third party liability (TPL)."* (Emphasis added.) This is just a patently false statement of the court's holding, as even Defendants must admit. Although Defendants' point to the court's third party *payment* analogy as authority for Idaho's position, it neither supports Idaho's position nor is relevant to the issue at hand.

Additionally, the Idaho policy fails to consider the other three pages of explanation and discourse in the October 10 order that led to the injunction in this case. For example, the court engages in a detailed economic analysis of UME payments concluding that under the old system, "[t]o the recipient, *it is as if the UME was never paid....* As the court stated in *Mitson [v. Coler* ], '[t]he inclusion of Plaintiff's additional [VA pension] payments in income would frustrate and perhaps nullify the effect of the UME provision.' 674 F.Supp. [851,] at 856 [ (S.D.Fla.1987) ]." *Sherman,* 775 F.Supp. at 1393 (emphasis in original). Under the old UME policy, "Medicaid gives with one hand but takes with the other." *Id.*

Under the guidance of the Medicaid statute, the Medicaid case law, and some good old-fashioned common sense, the court set out to set straight an arbitrary and capricious system under which the Medicaid procedures effectively nullified the VA UME payments that VA pensioners received for *reimbursement* of *out-of-pocket* unusual medical expenses. Any other patently unfair method devised for taking away those

UMEs are paid only for unreimbursed medical expenses. The court does not know whether the VA actually does pay veterans UMEs for Medicaid-provided services. It should not. However, to the extent that a UME is paid for services that were not (or will not be) out-of-pocket and were not provided under Medicaid, Plaintiff agrees that it is outside the scope of the relief of this order. The fact that the Idaho policy includes all UME payments makes it improper on its face.

**6.** Other commentators agree with the court's interpretation of the third party liability provi-

sion. 42 U.S.C. § 1396a(a)(25) only allows "recoupment of federal-state Medicaid funds from third parties who are liable for medical care provided to Medicaid recipients." *New York State Dept. of Social Services v. Bowen,* 661 F.Supp. 1537, 1540 (S.D.N.Y.1987), *rev'd on unrelated grounds,* 846 F.2d 129 (2d Cir.1988). There is no "recoupment of federal-state Medicaid funds from [liable] third parties" going on in the new Idaho policy. Only a taking of VA pensioners' reimbursement checks paid to them for their own previous out-of-pocket expenses unrelated to Medicaid.

reimbursements would have been struck-down by this court as being arbitrary and capricious as well had it existed at the time of the original litigation. However, the Idaho policy was adopted after (and apparently as a direct response to) the court's order, and had the effect of *de facto* reversing this court's decision in the state of Idaho. Thus, although the court would have ruled against such a policy had it existed at the time of the October 10 order, it could not have been explicitly guarded against it in the order of permanent injunction.

### III. *Conclusion*

The court concludes that the Idaho policy (and any other policy like it) contravenes both the letter and the spirit of the court's October 10 order. On its own, even in the absence of this litigation, it directly contradicts the purposes and regulations of the TPL payment requirements. Thus, the court orders the Federal Defendants to take appropriate steps to ensure Ninth Circuit compliance with today's order as well as both the word and the spirit of the October 10 permanent injunction. The court will attempt to make the issue clear so as to avoid future dispute and litigation:

> Any Medicaid procedure which in any way keeps any VA UME recipient from keeping and pocketing a VA UME payment as reimbursement for past unusual out-of-pocket medical expenses is arbitrary and capricious and a violation of the court's October 10, 1991 order. This includes any system which in any way requires a VA UME recipient to put any or all of a VA UME payment towards his or her past, present or future Medicaid care or expenses and/or reduces the recipient's eligibility for any Medicaid-covered care or service based upon receipt of a VA UME payment.

The Federal Defendants shall take immediate action to require the Ninth Circuit states' compliance with the terms of this order and shall monitor future compliance.

IT IS, THEREFORE, HEREBY ORDERED that Plaintiff's motion for an order enforcing the court's previous judg-ment and permanent injunction (document #71) is GRANTED. The Federal Defendants are ORDERED to issue the necessary policy statements and directives to ensure compliance with this order and the court's previous order of October 10, 1991. If the Federal Defendants allow any other erosion or contradiction of the letter or spirit of either of the court's orders, the court will consider further disciplinary action including, but not limited to, monetary sanctions.

IT IS FURTHER ORDERED that since the court has already ruled that Plaintiff, as a prevailing party, was entitled to attorney's fees under the Equal Access to Justice Act (see *Edwards v. Griepentrog*, 783 F.Supp. 522 (D.Nev.1991)), he is also entitled to attorney's fees for bringing a successful motion to enforce the same judgment. Therefore, the Plaintiff should submit a detailed bill of costs and fees associated with the motion to enforce the judgment within fifteen (15) days of the entry of this order. The Federal Defendants shall thereafter have fifteen (15) days within which to oppose Plaintiff's figures. No further substantive argumentation on the motion to enforce judgment will be considered. There will be no reply by Plaintiff.

### ORDER ON MOTION TO AMEND

On August 3, 1992 this Court entered an order to enforce judgement against the Federal Defendants in this case (document #75). We found the Idaho medicaid policy was directly contrary to our previous findings that Unusual Medical Expense ("UME") payments made by the Veterans Administration ("VA") cannot be counted as income in the "post-eligibility" phase of medicaid in which the recipient's share of costs is determined.

On August 14, 1992 the Federal Defendants filed a motion to amend our August 3, 1992 order (document #76). These Defendants claim that our order was based on a factual misunderstanding of how medicaid interacts with the UME payment scheme, that we overstated the Secretary of the Department of Health and Human Services's ability to compel compliance by

the Ninth Circuit states with the Court's order, and that we wrongly awarded attorney's fees to the Plaintiff for fees incurred filing the motion to enforce. We do not find that an amendment of the Court's order is appropriate on any of these grounds.

Plaintiff opposed the motion to amend the courts order and filed a motion requesting attorney's fee incurred in filing the opposition in the amount of $1,085 (document # 78). Both sides submitted supplemental memorandum (document # 80 and # 84).

## I. UME payments authorized for services covered by medicaid

Defendants argue that our order was based on an erroneous assumption that UME payments are not authorized for services covered by medicaid. On the contrary, this Court clearly considered that in some instances UME payments might be made for services provided by medicaid and that those instances were beyond the scope of the Court's order. *See* p. 6 n. 5. The Defendants' proposed amendment is unnecessary and puts too much emphasis on situations where UME payments may collected by medicaid thereby obfuscating the Court's holding.

## II. The ability of the Secretary to comply with the Court's order

On page 9 of the order the Court charged "the Federal Defendants [to] take immediate action to require the Ninth Circuit states compliance with the terms of this order and shall monitor future compliance." Defendants argue that this charge overstates the Secretary's ability to force the states in the Ninth Circuit to abide by the order and suggest that the order encroaches on the Secretary's discretion.

This order requires the Secretary to use means within his power to educate, encourage and perhaps coerce the states into aiding by this Court's order, and we expect the Secretary to monitor the Ninth Circuit states' policies. We leave it to the discretion of the Secretary to determine how to best comply with the order, and of course,

we do not require, nor can we, that he take steps which are beyond the power of his office.

The order does not interfere with the Secretary's discretion nor does it impose upon him an impossible task, rather the Court merely requires him to do his job which is to execute the medicaid laws as interpreted by this Court. Therefore no amendment of the order is necessary.

## III. The award of attorney's fees

■ The Defendants claim that the award of attorney's fees incurred filing the motion to enforce was improper under the Equal Access to Justice Act ("EAJA") 28 U.S.C. § 2412. The Defendants claim that in order to receive these fees the plaintiff should have filed an additional petition for fees and that the Court should have made a finding that the government's position was not "substantially justified." Defendants also argue that they were deprived the opportunity to oppose Plaintiff's entitlement to attorney's fees.

This Court has already made the determination that the Plaintiff is entitled to attorney's fees under EAJA. *See* order filed on December 18, 1992. The U.S. Supreme Court has held that it is unnecessary for a plaintiff to file a new EAJA petition and for a court to make a new finding that the government's position is not substantially justified at each stage of litigation. *Commissioner, Immigration and Naturalization Service v. Jean*, 496 U.S. 154, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990). Instead the Court found that one petition and one finding was sufficient for a plaintiff to recover attorney's fees for various stages in any given case.

The Defendant in *Jean*, like the Defendants here, argued that this approach was unfair because the government defendants lack the opportunity to oppose the award. The Court, however, was unimpressed with the argument. The Court points out that the no award of fees is "automatic," and that a district court always has discretion to adjust an unreasonable fee. *Id.* 496 U.S. at 163, 110 S.Ct. at 2321. The safeguard, according to the Court, is sufficient and

multiple petitions under EAJA are unnecessary.

In light of this case law, our ruling which grants plaintiff attorney's fee for bringing a motion to enforce is appropriate.

Additionally, the plaintiff, as prevailing party, is entitled to attorneys fees incurred in opposing the motion to amend. There does not appear to be a substantial justification for the Defendants position in its motion for reconsideration. The government has basically represented arguments the Court considered when ruling on Plaintiff's motion to enforce judgement. The Court finds the Defendants' position was without substantial justification, and that the plaintiff is entitled to attorney's fees.

IT IS, THEREFORE, HEREBY ORDERED that the motion to amend is DENIED.

IT IS FURTHER HEREBY ORDERED that the plaintiff is entitled to attorney's fees. The plaintiff has already submitted a detailed bill of costs and fees associated with the motion. The total amount of fees requested is $1,085. The Defendants shall have fifteen (15) days within which to oppose Plaintiff's figures. There will be no reply by Plaintiff.