**Leona BUCHANAN, by her attorney-in-fact Bob Buchanan, Plaintiff,**

v.

**Donna WHITEMAN in her official capacity as Secretary, Kansas Department of Social and Rehabilitation Services, Defendant/Third–Party Plaintiff,**

v.

**Donna SHALALA, in her official capacity as United States Secretary of Health and Human Services, Third Party Defendant.**

No. 93–4077–DES.

United States District Court,
D. Kansas.

Feb. 28, 1995.

Lowell C. Paul, Kansas Legal Services, Inc., Lane E. Williams, Molly M. Wood, Legal Aid Soc. of Topeka, Inc., Topeka, KS, for Leona Buchanan, Eva Carter and Daniel E. Bilquist.

Reid Stacey, Social & Rehabilitation Services, Topeka, KS, for Donna Whiteman, Secretary of Kansas Social and Rehabilitation Services and Janet Schalansky, Secretary of Social and Rehabilitation Services.

C. Geraldine Umphenour, Office of General Counsel, Dept. of Health & Human Services, Kansas City, MO, D. Brad Bailey, Office of U.S. Atty., Topeka, KS, for Donna Shalala.

### MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on the court's Order to Show Cause why this action should not be dismissed as moot. The court,

having received responses from the parties, is now prepared to render its decision.

## FACTUAL AND PROCEDURAL BACKGROUND

On April 1, 1993, plaintiffs Leona Buchanan, Eva Carter, and Daniel E. Bilquist filed this action naming Donna Whiteman, in her official capacity as Secretary, Department of Social and Rehabilitation Services, as defendant.[1] Plaintiff Buchanan's complaint is that defendant Whiteman unlawfully counted cash payments provided to plaintiff by the Veterans Administration for unreimbursed medical expenses as income in determining plaintiff's eligibility for Medicaid.

Leona Buchanan was 76 years old at the time this suit was instituted. She has resided at the Sterling Heights Nursing Home in Lawrence since May 1992. At the time she entered Sterling Heights, she applied for Medicaid coverage. At that time her monthly income consisted of Social Security Benefits: $962.00; Engineers Local 39 pension: $93.24; and a small amount of interest. Mrs. Buchanan's income was less than the maximum income level for eligibility for Medicaid coverage of nursing home costs of $1,266 and her application was approved. Mrs. Buchanan was required to pay most of her income each month for the nursing home bill.

At the time she was determined eligible for Medicaid coverage, Mrs. Buchanan had an application pending for pension benefits from the Department of Veterans Affairs ("DVA"). This application was approved and Mrs. Buchanan was awarded benefits of $577 per month beginning July 1, 1992. Mrs. Buchanan's income from Social Security, the Engineers Local 39 pension and interest was in excess of the maximum income limitation established by the VA for a widow entitled to aid and attendance. However, when an amount equal to the amount of her unreimbursed medical expenses for nursing home care was excluded from her income, she became eligible for a monthly VA benefit. Of the $577 monthly DVA benefit, $248 was attributed to Mrs. Buchanan's aid and attendance.

Defendant Whiteman was notified in September 1992, that Mrs. Buchanan had been approved and was receiving DVA benefits. Whiteman redetermined Mrs. Buchanan's eligibility for Medicaid and concluded that her income was now in excess of the maximum income eligibility level for coverage of nursing home costs. Whiteman counted $329 as income against Mrs. Buchanan. Whiteman did not count as income the $248 attributed to aid and attendance.

Mrs. Buchanan was notified on October 1, 1992, that she was no longer eligible for Medicaid and that she would be required to pay her monthly nursing home bill on her own. Mrs. Buchanan filed an administrative appeal to contest the termination of Medicaid. The parties agreed that the appeal should be continued pending a judicial resolution. During the pendency of the appeal Whiteman has continued Medicaid coverage of Mrs. Buchanan's nursing home costs.

Following the institution of this action on April 1, 1993, defendant Whiteman filed an Answer on April 22, 1993. On April 23, 1993, Whiteman filed a Third Party Complaint against Donna Shalala, the United States Secretary of Health and Human Services seeking to obtain a court order compelling the federal government to pay matching funds if SRS must reimburse plaintiffs pursuant to a court order.

On June 3, 1993, third party defendant Shalala filed a Motion to Dismiss claiming: (1) there was no case or controversy ripe for review, (2) the State had not availed itself of administrative remedies and (3) service on the Secretary was not proper. Defendant Whiteman filed a reply to the Motion to Dismiss on June 17, 1993, claiming that the Secretary was properly served and that because the Secretary has the primary responsibility for defending federal policy she is a proper party to the action.

On September 30, 1993, plaintiff Buchanan filed a Motion for Summary Judgment claiming that the clear language of the statute and the decisions of the courts support the position that DVA unreimbursed medical ex-

---

1. Eva Carter and Daniel Bilquist have died since this action was instituted. Leona Buchanan, therefore, remains the only plaintiff in this action.

penses are not income for purposes of Medicaid eligibility. On November 12, 1993, Defendant Whiteman filed a response to plaintiff Buchanan's Motion for Summary Judgment asserting that agency action should be entitled to a strong presumption of validity and should be given deference by the court. Whiteman also claimed that the case law on this topic was erroneous. On the same date, Defendant Whiteman filed a Motion for Summary Judgment against third party defendant Shalala claiming that Kansas was in compliance with federal regulations and seeking an injunction preventing Shalala from finding Kansas was out of federal compliance in the event a judgment was entered in favor of plaintiff Buchanan in this action.

On November 29, 1993, plaintiff Buchanan filed a Reply Memorandum. On December 17, 1993, third party defendant Shalala filed a Supplement to her third party defendant's Motion to Dismiss and third party defendant's Response to defendant/third party plaintiff's Motion for Summary Judgment. In her Supplement to the Motion to Dismiss, Shalala noted that plaintiffs Carter and Bilquist were now deceased and that the DVA had reduced plaintiff Buchanan's pension to an amount that would no longer affect her Medicaid entitlements making the action moot.

In her response to defendant's Motion for Summary Judgment Shalala claims the court owes deference to the agency's interpretation of its rules and regulations and reiterates defendant Whiteman's claim that court decisions which have found that unreimbursed medical expenses cannot be counted as income are erroneous. Shalala again asks that the action be dismissed.

On October 24, 1994, third party defendant filed a Report to the Court and Second Supplement to third party defendant's Motion to Dismiss. In her report to the court, Shalala states "that on July 1, 1994, final rules were published in the Federal Register 'which revise the regulations as to what is considered not to be income under the supplemental

security income (SSI) program' in certain instances. 59 Fed.Reg. 33906 (July 1, 1994). This final rule, effective July 1, 1994, amends Part 416 of title 20 of the Code of Federal Regulations, directing that Department of Veterans Affairs (DVA) payments resulting from unusual medical expenses are not income. 20 C.F.R. § 416.1103(a)(7)." In addition, she reports that the Director of the Medicaid Bureau, Health Care Financing Administration ("HFCA"), Department of Health and Human Services, issued a directive to Regional Administrators stating that total income for post-eligibility purposes will mean the total amount considered to be income in the eligibility determination.

Shalala concludes that any case or controversy which existed prior to this has now been removed from the case and once again asks the court to dismiss the action.

On December 7, 1994, the court, based on the change in the regulations which precludes DVA unreimbursed medical expenses from being considered income for Medicaid purposes, issued an Order to Show Cause to plaintiff Buchanan and defendant Whiteman to show cause within ten days why the action should not be dismissed as moot.

Plaintiff Buchanan filed a timely response to the Order to Show Cause. In her response, Buchanan argued that defendant Whiteman had yet to alter her policy to conform with the new regulation. Buchanan also argues that even if defendant Whiteman did institute the new regulation, plaintiff was still in jeopardy because there had been no determination of the validity of defendant Whiteman's prior policy. Plaintiff Buchanan raised concerns of whether defendant Whiteman would seek to recover the Medicaid payments paid to Buchanan during the pendency of this action and before her DVA payments were reduced.

Defendant Whiteman filed an out-of-time Memorandum in Response to Plaintiff's Response to the Order to Show Cause.[2] In her Memorandum, defendant Whiteman claims she has instituted the regulation making

---

2. On January 30, 1995, the court granted Defendant Whiteman's Motion to Substitute Party Under Fed.R.Civ.P. Rule 25(d). The order substituted Janet Schalansky, the Acting Secretary of Social and Rehabilitation Services for Donna Whiteman, the former Secretary of Social and Rehabilitation Services.

plaintiff Buchanan's claim moot. She further claims that SRS has made no threat to recover the funds and that there is no indication that plaintiff Buchanan has any assets which could be recovered. However, defendant notes that all payments are subject to recovery because Kansas has enacted an Estate Recovery program. K.S.A. 39–709(g)(2) (1993). In essence, defendant Whiteman argues plaintiff Buchanan's claim is purely speculative and should be dismissed as moot.

Plaintiff Buchanan filed her Response to Defendant's Reply Memorandum on February 1, 1995, and acknowledges that defendant apparently is now complying with the new regulations, but raises again the question of defendant's position of recovery based on the prior policy.

## DISCUSSION

At the outset, the court acknowledges that the questions before it have changed during the pendency of this action. While there has been both a practical and legal resolution to plaintiff's initial complaint, that does not obviate answers to other concerns. First, the practical resolution to Mrs. Buchanan's complaint occurred when DVA reduced her pension to an amount which did not exceed the maximum allowable for Medicaid coverage. Second, because the federal regulation has become a final rule and unreimbursed medical expenses from DVA are no longer considered income for Medicaid purposes, Mrs. Buchanan has a legal resolution which prevents any future harm.

The issue which remains unresolved, and which the court now addresses, is whether defendant Whiteman's prior policy of including DVA unreimbursed medical expenses as income was violative of federal law. If the court finds in the affirmative, Whiteman would be enjoined from seeking overpayment recovery of Mrs. Buchanan's nursing home costs from October 1, 1992, to June or July 1993. For the reasons stated below, the court finds that defendant Whiteman's prior policy was violative of federal law and she must be enjoined from seeking overpayment recovery for Medicaid nursing home costs

paid between October 1992 and June or July 1993.

As early as 1982, the federal courts concluded that the part of DVA pensions designated as "unreimbursed medical expenses" could not be considered income for computing SSI benefits.[3] *Summy v. Schweiker,* 688 F.2d 1233 (9th Cir.1982). In *Peefers v. Bowman,* 599 F.Supp. 353, 355 (D.Idaho 1984), the court, relying on *Summy,* held that reimbursed unusual expenses were not income for purposes of Medicaid eligibility. In *Mitson v. Coler,* 674 F.Supp. 851, 857 (S.D.Fla.1987), the court permanently enjoined defendants from including VA pensions' reimbursed medical expenses as income for purposes of determining Medicaid eligibility.

In perhaps the most well-reasoned and analogous case to the instant case, the court, in *Sherman v. Griepentrog,* 775 F.Supp. 1383, 1392 (D.Nev.1991), said "UME payments are, pure and simple, reimbursements for out-of-pocket unusual medical expenditures; they are not 'income.'" In that case, the court reasoned that if it adopted the Secretary's view that such payments were income for Medicaid post-eligibility purposes, pensioners would receive inconsistent and burdensome treatment. The court opined that by not counting the UME during eligibility and then counting it during post-eligibility, the agency would be giving with one hand but taking with the other. The end result would be "as if the UME was never paid." *Id.* at 1392–93. Recipients would be in no better position than if they had not received UME. Furthermore, the court noted that payments from third-party private insurance payments for incurred medical expenses are not considered income during the post-eligibility phase. This distinction without a difference led the court to the extricable conclusion that defendants must be permanently restrained and enjoined from treating UME "at any time in the past, present, or future as income during the post-eligibility share of cost determination." *Id.* at 1394.

In *Perley by Perley v. Palmer,* 157 F.R.D. 452 (N.D.Iowa 1994), the court in a 1992 ruling issued a preliminary injunction requir-

---

**3.** The terms unreimbursed medical expenses, reimbursed unusual medical expenses, and unusual medical expenses seem to be used interchangeably throughout the case law.

ing the Iowa Department of Human Services to redetermine the Medicaid eligibility of plaintiff Perley and disregard as income any part of Perley's DVA pension which was paid for unusual medical expenses.

The court finds the above cited case law persuasive, particularly, *Sherman.* For more than a decade, the courts have consistently found that DVA unreimbursed medical expenses are not income for Medicaid eligibility purposes. The fact that Secretary Shalala and Defendant Whiteman only recently came to that conclusion, does not change the state of the law as interpreted by the courts.

The court finds that because the state of the case law was clearly in Mrs. Buchanan's favor long before this action was commenced, she is entitled to the benefit of that law. The past payments made to Mrs. Buchanan were properly paid and are not subject to recovery. Defendant Whiteman may not seek repayment from Mrs. Buchanan for Medicaid payments made to her between October 1992 and June or July 1993 because those payments were not overpayments.[4]

**IT IS THEREFORE BY THE COURT ORDERED** that third party Secretary Shalala's motion to dismiss (Doc. 6) is granted.

**IT IS FURTHER ORDERED** that defendant Whiteman's motion for summary judgment against Shalala (Doc. 22) is denied as moot.

**IT IS FURTHER ORDERED** that plaintiff Buchanan's motion for summary judgment (Doc. 16) is granted.

**IT IS FINALLY ORDERED** that defendant Whiteman is permanently restrained and enjoined from seeking recovery of Medicaid benefits paid to plaintiff Buchanan between October 1992 and June or July 1993 because of the defendant's erroneous ruling that DVA- unreimbursed medical expenses amounted to income for Medicaid eligibility purposes.

---

**4.** Defendant Whiteman's reference, in her brief, to the Kansas Estate Recovery Program, K.S.A. 39-709(g)(2) (1993) as a means for recovering

Dated this 24 day of February, 1995, at Topeka, Kansas.

from Mrs. Buchanan is simply not applicable in this case as Mrs. Buchanan is still living.