[No. 23171-9-II. Division Two. July 9, 1999.]
STEPHANIE CORDALL, *as Guardian*, ET AL., *Appellants*, v. THE STATE OF WASHINGTON, *Respondent*.

*Mary H. Spillane* of *Williams, Kastner & Gibbs*, for appellants.

*Christine O. Gregoire, Attorney General*, and *Ann Frances MacMurray* and *Adrienne Elizabeth Smith, Assistants*, for respondent.

HUNT, J. — Plaintiffs Stephanie Cordall, et al., appeal the trial court's summary judgment dismissal of their class action lawsuit, in which they claimed that the State wrongfully retained certain portions of veterans' disability pensions. Holding that the State was entitled to collect unusual medical expenses and "aid and attendance" for which plaintiffs had been reimbursed, we affirm.

## FACTS

### I. VETERAN DISABILITY PENSIONS

The Washington State Department of Veterans Affairs operates two in-state institutions dedicated to armed forces veterans' care:[1] One is in Retsil; the other is in Orting. RCW 72.36.010, .050, .055, .070. In 1993, both institutions became Medicaid certified nursing homes. LAWS OF 1993, Sp. Sess., ch. 3 § 2.

Before being accepted at either home, veterans must: (1) establish indigency; and (2) "apply for all federal and state benefits for which they may be eligible, including medical assistance under chapter 74.09 RCW."[2] RCW 72.36.030(3). A veteran who is eligible to receive Medicaid is deemed indigent. WAC 484-20-040. Congress established three interrelated benefit programs: (1) the Medicaid program, administered at the federal level by the Department of Health and Human Services (HHS) and at the state level by the Department of Social and Health Services (DSHS); (2) the veterans disability benefits program, administered by the United States Department of Veterans Affairs (USDVA); and (3) the state veterans home program, administered by Washington State Department of Veterans Affairs (WDVA).

---

[1]"All honorably discharged veterans of a branch of the armed forces of the United States or merchant marines[,] members of the state militia disabled while in the line of duty[, certain other specific veterans, and qualifying spouses can apply for admission to the state veterans home if they are also bona fide residents of this state.]" RCW 72.36.030.

[2]RCW 74.09 governs state provided medical assistance, including the cooperative federal-state Medicaid program.

The United States supports disabled veterans in two ways: disability pension or compensation. If the veteran becomes disabled for a non-service-connected reason, the veteran receives a disability pension, based on the veteran's income, under 38 U.S.C. §§ 1501-1508. If the veteran is disabled while acting in the line of duty (a service-connected disability), the veteran receives compensation, under 38 U.S.C. §§ 1101-1163. Compensation for veterans with a service-connected disability is not based upon the veteran's income but, rather, is based upon the extent of the disability.

The veterans pension program provides income assistance to eligible persons who have wartime service and are permanently and totally disabled from non-service-connected causes with net worth and income below specified levels. 38 U.S.C. §§ 1502, 1521, 1522. The current pension program, enacted by Congress in 1978, is based on need and provides a basic level of income support. H.R. REP. No. 95-1225, at 27 (1978) *reprinted in* 1978 U.S.C.C.A.N. 5583, 5608. The amount of pension awarded is "the difference between the annual income available to the veteran or the surviving spouse and the minimum income floor established by Congress." *Id.* Essentially, a veteran with no other income, such as social security, is awarded the maximum pension amount; a veteran with non-pension income is awarded the difference between the non-pension income and the maximum pension amount. *Id.* at 5508-09. The maximum annual rate of pension is thus reduced dollar-for-dollar by the veteran's other countable income.

Unusual medical expenses (UME) are excluded from countable income. 38 U.S.C. § 1503(a)(8). UME are generally defined as unreimbursed medical expenses that exceed five percent of the maximum annual Veterans' Administration (VA) pension rate. 38 U.S.C. § 1503(a)(8). UME serve to increase payable pension because they work as an offset to non-pension income. Aid and attendance allowance (A&A) is an increase in the basic pension for veterans who

are patients in nursing homes, helpless or blind, or so nearly so as to need the regular aid and attendance of another person. 38 U.S.C. §§ 1502(b), 1521(d). The State collects that part of veterans' pensions attributable to UME and A&A. The State uses this money to defray its cost of caring for veterans in the state veterans' homes.

## II. Plaintiffs' Claim

The class plaintiffs comprise veterans and the estates of veterans who had (1) resided at either State veterans' home since July 1, 1993; (2) received a federal veteran's pension that included an allowance for "unreimbursed medical expenses" and/or "aid and attendance"; (3) participated in the Medicaid program; and (4) paid any portion of UME or A&A allowance to the State based on Medicaid eligibility requirements. Claiming the veterans had overpaid the State for Medicaid services, their guardians and personal representatives filed a class action lawsuit on August 27, 1996. Stephanie Cordall is the guardian for several veterans and the personal representative for the estates of several others.[3]

Cordall claimed that the State withheld these amounts contrary to federal law. The State responded that: (1) Cordall's interpretation of federal law was wrong; (2) the State was in full compliance with federal law; and (3) it had rightly collected the contested portions of the veterans' pensions. Both parties moved for summary judgment.

In a letter dated December 16, 1997, the trial court granted the State's motion for summary judgment, ruling that under Medicaid law the State was entitled to recover reimbursed unusual medical expenses and aid and attendance. The order granting summary judgment was entered on February 8, 1998. Cordall filed a motion for reconsideration under CR 59(a), which the trial court denied.

---

[3]For ease of reference, we refer to the entire class of plaintiffs as "Cordall."

On appeal, Cordall contends that: (1) DSHS disregarded State Action Letters,[4] issued by the federal Health Care Financing Administration (HCFA), which directed the states to cease treating veterans' reimbursed unusual medical expenses and aid and attendance as recoverable third-party liability[5] under Medicaid; and (2) this failure to follow federal policy breached the Medicaid contract and, therefore, enables the veterans to recover damages as third-party beneficiaries under contract law.

## ANALYSIS
### I. STANDARD OF REVIEW

■ When reviewing an order of summary judgment, we conduct the same inquiry as the trial court. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). If pleadings, depositions, affidavits, and admissions, viewed in a light most favorable to the nonmoving party, show there is no genuine issue of material fact, and the party is entitled to judgment as a matter of law, summary judgment is proper. *Id.* at 437.

The interplay between state and federal veterans' programs and between veterans' disability and medicaid programs is complex. Moreover, different programs use some of the same terms but with slightly differing meanings or derivative formulae. In this opinion, we attempt first to break down these programs into understandable components and then to explain how the components work together to form the basis for our holding.

### II. DISABILITY PENSION

The veterans whom Cordall, et al., represents received

---

[4]State Action Letters represent interpretations of Medicaid law by the Secretary of Health and Human Services.

[5]Under the Medicaid scheme, if any other program, entity, or individual is liable to pay for medical assistance that was provided by Medicaid, then the state is authorized to collect that amount from that *third party*.

disability pensions[6] from the U.S. Department of Veterans Affairs. The purpose of a disability pension is to ensure that no disabled person who served this nation in time of war ever falls below the poverty line. *See* 1976 U.S.C.C.A.N. 2514. A "floor" amount is set by federal law: If the disabled veteran's income is below this amount, the veteran will receive a disability pension, which, when coupled with income, provides the veteran with the "floor." If the veteran has no income, the full pension amount, or the "floor," is paid to the veteran as a disability pension.

A veteran's income is determined on an annual basis. UME are deducted based on actual or projected medical expenses. This annual calculation renders an annual pension amount, which is then amortized over 12 months. The veteran receives the monthly pension as a single dollar

---

[6]To qualify for a VA disability pension, the veteran must have served in the active military, naval, or air service—

(1) for ninety days or more during a period of war;

(2) during a period of war and was discharged or released from such service for a service-connected disability;

(3) for a period of ninety consecutive days or more and such period began or ended during a period of war; or

(4) for an aggregate of ninety days or more in two or more separate periods of service during more than one period of war.

38 U.S.C. § 1521(j). In addition, the veteran must be disabled:

(a) For the purposes of this chapter, a person shall be considered to be permanently and totally disabled if such a person is unemployable as a result of disability reasonably certain to continue throughout the life of the disabled person, or is suffering from—

(1) any disability which is sufficient to render it impossible for the average person to follow a substantially gainful occupation, but only if it is reasonably certain that such disability will continue throughout the life of the disabled person; or

(2) any disease or disorder determined by the Secretary to be of such a nature or extent as to justify a determination that persons suffering therefrom are permanently and totally disabled.

(b) For the purposes of this chapter, a person shall be considered to be in need of a regular aid and attendance if such person is (1) a patient in a nursing home or (2) helpless or blind, or so nearly helpless or blind as to need or require the regular aid and attendance of another person.

38 U.S.C. § 1502.

amount; the UME portion is not separately identified. The UME calculation comes into play only during the annual pension calculation. *See* 38 C.F.R. §§ 3.260, 3.262, 3.273.

## A. "INCOME"

For purposes of a veteran's disability pension, "income" is defined as:

> all payments of any kind or from any source (including salary, retirement or annuity payments, or similar income, which has been waived, irrespective of whether the waiver was made pursuant to statute, contract, or otherwise)[.]

38 U.S.C. § 1503(a). Excluded from income are:

> amounts equal to amounts paid by a veteran, veterans' [sic] spouse, or surviving spouse or by or on behalf of a veteran's child for unreimbursed medical expenses, to the extent that such amounts exceed 5 percent of the maximum annual rate of pension[.]

38 U.S.C. § 1503(a)(8). These expenses are called "unusual medical expenses" because "[they do] not describe the nature of a medical condition but rather *the amount expended for medical treatment in relationship to the claimant's resources available for sustaining a reasonable mode of life*." 38 C.F.R. § 3.262(*l*) (emphasis added). A veteran with unusual medical expenses may reduce total income for that year by expenses that exceed five percent of the maximum pension amount.

## B. "UNUSUAL MEDICAL EXPENSES" REIMBURSEMENT

■ Reimbursement for UME is "intended to be used to pay for medical expenses and [it is] in no meaningful way available to [veterans] to meet their basic needs[.]" *Mitson v. Coler*, 670 F. Supp. 1568, 1577 (S.D. Fla. 1987). Reimbursement for UME compensates the veteran for a reduction in income and has the effect of increasing that

veteran's pension award. The resultant amount by which the disability pension is increased is called the UME portion of the pension.[7] 38 U.S.C. § 1503.

### III. FEDERAL-STATE MEDICAID

Medicaid is a cooperative arrangement between participating states and the federal government, under which a state receives federal matching funds once its state plan meets with federal approval. 42 U.S.C. § 1396. Each state must agree to comply with federal statutes, regulations, and applicable official issuances of the Health Care Financing Administration. 42 C.F.R § 430.10. But when a letter from HCFA "lacks the indicia of deliberative administrative review," it is not necessarily entitled to deference by the state. *Citizens Action League v. Kizer*, 887 F.2d 1003, 1007 (9th Cir. 1989).[8]

### A. INCOME
#### 1. Medicaid Qualification

Eligibility for Medicaid is based on income. Unusual medical expenses are exempt from Medicaid income deter-

---

[7] For example, in 1997, the maximum disability pension available to a veteran without dependents was $8,486 per year ($8,500). Fed. Reg. 2442, 2443 (1997). If the veteran had $9,500 income that year, she would not receive a disability pension. But, if the veteran had $3,000 in out *of pocket unreimbursed* medical expenses, such as dental work, medical supplies, or a motorized wheelchair, she could claim those expenses as unusual medical expenses. For simplicity, exclusive of the 5 percent threshold, her net income would be $6,500, $2,000 less than the maximum disability pension. She would then receive $2,000 as her disability pension, which would be considered as unusual medical expenses. Thus, in addition to her excessive medical expenses, the veteran would have a poverty level income to sustain a reasonable mode of life.

[8] In *Citizens Action League*, the court held that the state's interpretation of federal law was correct and that the state rightly chose to disregard unsubstantiated interpretations lacking indicia of deliberate administrative review by the federal agency. There, the letter was written in response to litigation, discussed statutory interpretation, and was not related to a long-standing regulation. *Citizens Action League*, 887 F.2d at 1007.

mination.[9] *Summy v. Schweiker,* 688 F.2d 1233 (9th Cir. 1982); WAC 388-513-1340.

## 2. Participation Amount

Once an individual qualifies for Medicaid, a second income determination is made; this constitutes the recipient's "participation amount."[10] The participation amount comprises the individual's income determination, further reduced by several factors, including a $160 per month personal needs allowance. WAC 388-513-1380.

## B. THIRD-PARTY PAYMENT

Medicaid is the payor of last resort. The Medicaid statutory scheme requires the State to identify any possible third parties responsible for a portion of an individual's services provided by Medicaid. 42 U.S.C. § 1396a(a)(25). A third party is "any individual, entity or program that is or may be liable to pay all or part of the expenditures for medical assistance furnished under a State plan." 42 C.F.R. § 433.136. The State must collect funds from a third party otherwise legally liable to pay for the services being provided to the veteran by Medicaid. *See* 42 U.S.C. § 1396k; WAC 388-87-010(2).

## C. AID & ATTENDANCE (A&A)

 The federal Veterans Administration Aid and Attendance compensates veterans for the increased costs of

---

[9]Thus, reimbursement for out-of-pocket excessive medical expenses, which reduce a veteran's annual income, cannot be considered as income under the Medicaid program, even if the reimbursement comes from a third party.

[10]The participation amount is that amount the institutionalized individual must contribute to the cost of care provided by Medicaid. WAC 388-513-1380. Once an institutionalized veteran qualifies for Medicaid, the state Medicaid program pays for the cost of institutional care and the patient is required to contribute any qualifying income to that cost. Individuals covered by Medicaid in institutions receive the same care regardless of their individual participation cost. As such, the institutionalized patient is not "purchasing" medical services with the participation amount.

daily care.[11] The purpose of A&A is to secure necessary medical care. A&A augments the pension of a veteran who is "(1) a patient in a nursing home or (2) helpless or blind, or so nearly helpless or blind as to need or require the regular aid and attendance of another person." 38 U.S.C. § 1502(b). A&A payments are exempt from Medicaid income determinations. WAC 388-513-1340(8)(c); WAC 388--511-1140(1)(*l*)(ii) (1998).

Unlike UME, A&A is not reimbursement for out-of-pocket medical expenses. Rather, it is a monetary allowance that the veteran may use to purchase care from another, such as full-time nursing care, "based on an assessment of the veteran's physical and medical need[.]" *Krueger v. Richland County Soc. Servs.*, 526 N.W.2d 456, 463 (N.D. 1994). When Medicaid provides the aid and attendance, the State can recover its cost because "the Veterans Administration aid and attendance allowance program is a 'third party' obligated to pay for those Medicaid-rendered services," even though there is no statutory mandate requiring the veteran to use the allowance for such care. *Krueger,* 526 N.W.2d at 463.[12]

We find *Krueger* persuasive. Aid and Attendance is intended to give the disabled veteran the ability to purchase additional care necessitated by the veteran's debilitating condition. When that care is provided by Medicaid, the veteran has no need for the additional A&A allowance to purchase additional care because Medicaid is already providing that service. We agree with *Krueger* and hold that when A&A is given to a veteran whose aid and atten-

---

[11]In 1997, qualifying veterans received an augmented pension of $13,573 per year. 62 Fed. Reg. 2442, 2443 (1997). A veteran entitled to a standard pension of $8,486 who qualifies for A&A receives an additional $5,087. The yearly pension benefit is adjusted upwards, and that annual calculation is then divided into 12 payments; the monthly payment does not separate UME or A&A from the base pension amount.

[12]The *Krueger* court reasoned that "the Veterans Administration views aid and attendance allowances as medically related during institutionalization because it discontinues the allowance as duplicative during a veteran's extended hospitalization in a Veterans Administration facility." *Krueger,* 526 N.W.2d at 464; 38 U.S.C. § 5503(e).

dance needs are already met by Medicaid, the State may recoup the A&A paid by the Veterans' Administration, which is a third party liable under Medicaid.

## D. UNUSUAL MEDICAL EXPENSES

 Similarly, under 38 U.S.C. § 1503, the Veterans Affairs Department is legally liable to reimburse veterans for unusual medical expenses. When a veteran's reimbursed unusual medical expenses are based on services provided by Medicaid, the VA becomes a third party liable under the Medicaid program to pay for these services. Thus, the State can validly retain the UME portion of a disabled veteran's pension claimed for medical services provided by Medicaid.

Cordall's veterans were qualified to receive Medicaid. The State veterans' homes are authorized Medicaid providers.[13] The parties agree that since the State veterans' homes became Medicaid qualified in 1993, DSHS has been including Cordall's UME and A&A as third-party liability and collecting it along with Cordall's participation amount. But, central to our holding is that Cordall and the class plaintiffs do not claim UME based on *out-of-pocket* medical expenses; they base their UME claims solely on their *participation amounts* under the Medicaid program.

### 1. Federal Law Concerning Third Party Liability

 HCFA issued the first State Action Letter (SAL) in question in response to *Sherman v. Griepentrog*, 775 F. Supp. 1383 (D. Nev. 1991);[14] it instructed the states to include unusual medical expense reimbursements *as* third-party liability. After a second suit to enforce the court's order in *Sherman*, HCFA issued a second SAL, stating that only if the unusual medical expense reimbursement was related to Medicaid-provided services could the reimburse-

---

[13]Medicaid eligibility for institutional care is governed by WAC 388-513-1300 through -1396.

[14]In *Sherman* the court held that unusual medical expense reimbursements cannot be termed "income" for the Medicaid participation amount computation. *Sherman*, 775 F. Supp. 1383.

ment be collected as third-party liability under Medicaid.[15] After the Nevada federal district court issued a third, unpublished order regarding the *Sherman* plaintiffs, HCFA issued a third SAL, directing the states to cease collecting unusual medical expense reimbursements as third-party liability under Medicaid.

The issue here is whether the State rightly elected to disregard the SALs and to substitute its own interpretation of controlling federal law. Where lower federal court precedents are divided or lacking, state courts must

> necessarily make an independent determination of federal law. Any rule which would require the state courts to follow in all cases the decisions of one or more lower federal courts would be undesirable, as it would have the effect of binding the state courts where neither the reasoning nor the number of federal cases is found persuasive. Such a rule would not significantly promote uniformity in federal law, for the interpretation of an Act of Congress by a lower federal court does not bind other federal courts except those directly subordinate to it.

*Rohr Aircraft Corp. v. San Diego County,* 51 Cal. 2d 759, 764-765, 336 P.2d 521, 524 (1959).

We look to federal law to determine the weight of authority, and we find the State's interpretation of federal law persuasive. Federal courts have consistently held that a veteran's pension reimbursement for unusual medical expenses is *not income because it is a third-party payment for out-of-pocket medical expenses.*[16]

An Idaho federal district court held that reimbursed unusual medical expenses cannot be termed income, citing 20 C.F.R. § 416.1109(a) (1980), which stated that the "term

---

[15]After Idaho began collecting all UME as third-party liability (TPL), the same court, in *Edwards v. Griepentrog,* 804 F. Supp. 1310 (D. Nev. 1992), held that UME that are not paid for Medicaid-related services cannot be collected as TPL because to allow this practice subverts the court's earlier ruling that UME are not to be considered as income in the Medicaid participation determination.

[16]*Summy v. Schweiker,* 688 F.2d 1233, 1235 (9th Cir. 1982); *Peffers v. Bowman,* 599 F. Supp. 353, 355 (D. Idaho 1984); *Mitson v. Coler,* 670 F. Supp. 1568, 1575 (S.D. Fla. 1987); *Sherman v. Griepentrog,* 775 F. Supp. 1383, 1393 (D. Nev. 1991); *Buchanan v. Whiteman,* 877 F. Supp. 571, 575 (D. Kan. 1995).

'income' does not include the value of any *third-party payment for medical care or medical services* furnished to a beneficiary." "If an income source is not counted as 'income' for the [Supplemental Security Income] SSI program, then it may not be counted as 'income' for the Medicaid program." *Peffers v. Bowman,* 599 F. Supp. 353, 355 (D. Idaho 1984).[17] (Emphasis added.)

A Florida federal district court has held that reimbursement for UME cannot be counted as income for Medicaid purposes because:

> It is clear from our analysis of the VSPIA that these amounts should be excluded from income under 20 C.F.R. 416.1103(a)(3) as "assistance provided . . . under a Federal, State, or local government program, whose purpose is to provide medical care or services" just as they would have been excludable under 20 C.F.R. 416.1109(a) as *"third party payment for medical care or medical services."*

*Mitson,* 670 F. Supp. at 1575 (emphasis added). Consistent with this holding, Medicaid regulations were amended in 1994 to provide that veteran pension reimbursement for unusual medical expenses could not be collected as income. 59 Fed. Reg. 33906 (1994); 20 C.F.R. § 416.1103(a)(7) (1994).

Cordall argues that the reimbursed unusual medical expense portion of a veteran's pension cannot be collected as third-party liability, citing another federal district court decision, *Edwards v. Griepentrog,* 804 F. Supp. 1310 (D. Nev. 1992): "Any Medicaid procedure which in any way keeps any VA UME recipient from keeping and pocketing a VA UME payment as reimbursement for past unusual out-of-pocket medical expenses is arbitrary and capricious and a violation of this court's October 10, 1991 Order." *Ed-*

---

[17]In *Summy,* the Ninth Circuit held UME could not be treated as income because SSI regulations exclude " 'third party payment for medical care or medical services furnished to a beneficiary.' " UME qualify as such payments; thus, UME are excluded from income determinations. *Summy,* 688 F.2d at 1235.

*wards*, 804 F. Supp. at 1314.[18] The court noted in a further, unpublished order, that "under no circumstances may a UME be treated as [third party liability]." *Edwards v. Griepentrog*, No. CU-N-90-284-ECR (D. Nev. 1993) (order dated May 11, 1993).

> When one considers why and how VA pensioners receive UME payments it quickly becomes apparent that the VA's UME payment program is not a "third party."[] VA pensioners receive UME payments as *reimbursement* for previously incurred *out-of-pocket* medical expenses. They do not receive the payments as reimbursement for *Medicaid* services.

*Edwards*, 804 F. Supp. at 1312.

The court further noted that although typically Medicaid is a payor of last resort, "in the UME context, Medicaid is not a payor of any kind as it did not pay for any part of the service or care for which the VA UME was paid—the patient did." *Id.* "Why would the [third party liability] payment scheme provide that the state agency could seek 'reimbursement' for services that *it did not pay for*?" *Edwards*, 804 F. Supp. at 1312-13.

The *Edwards* court based these statements on its understanding that UME was reimbursement for out-of-pocket medical expenses not provided by Medicaid:

> The parties agree that to the extent that a UME payment is given for an "incurred medical expense" under Medicaid, it is not really the type of UME discussed in this order. Under this limited scenario, the UME presumably is paid for services actually provided for by Medicaid. This, of course, should not occur if the VA UMEs are paid only for unreimbursed medical

---

[18]This case originated as *Sherman v. Griepentrog*, 775 F. Supp. 1383. That case held that UME could not be collected as income under Medicaid because UME amounts "are, pure and simple, reimbursements for out-of-pocket unusual medical expenditures; they are not 'income.' " *Sherman*, 775 F. Supp. at 1392. The state of Idaho then began collecting UME as third-party liability, and the *Sherman* plaintiffs sought enforcement of the earlier order prohibiting states from collecting UME. The court granted relief in *Edwards*, holding that UME that are reimbursed for non-Medicaid out-of-pocket medical expenses cannot be collected as third-party liability under Medicaid. *Edwards*, 804 F. Supp. 1310. This litigation resulted in the three HCFA SALs, which the class plaintiffs claim correctly state federal law and bind DSHS.

> expenses. The court does not know whether the VA actually does pay veterans UMEs for Medicaid-provided services. It should not. However, to the extent that a UME is paid for services that were not (or will not be) out-of-pocket and were not provided under Medicaid, Plaintiff agrees that it is outside the scope of the relief of this order.

*Edwards*, 804 F. Supp. at 1312-13 n.5. The *Edwards* court "clearly considered that in some instances UME payments might be made for services provided by [M]edicaid and that those instances were beyond the scope of the Court's order [and recognized that there are] situations where UME payments may [be] collected by [M]edicaid . . . ." *Id.* at 1315.

### 2. Plaintiffs' Claims

But here, again, the class plaintiffs claim their Medicaid participation amounts as unusual medical expenses. The *Edwards* court expressly exempted such UME from its ruling that UME cannot be collected as third-party liability under the Medicaid program. The *Edwards'* court noted that the VA should not reimburse veterans for unusual medical expenses that are claimed for services already provided by Medicaid. *Id.* at 1312-13 n.5.

We agree with *Edwards* that UME claimed for a Medicaid-provided service are not the type of unusual medical expenses that should offset a veteran's income. But to the extent that the class plaintiffs are receiving an increased disability pension resulting from unusual medical expenses claimed for Medicaid-provided services, the State is entitled to recover that amount of the veteran's pension as third-party liability under the Medicaid statutory scheme. The weight of federal authority supports the State's interpretation. We hold that reimbursed unusual medical expenses based on services provided by Medicaid

can be retained by the State as third-party liability under Medicaid.

## CONCLUSION

We hold that: (1) when a veteran receiving state veterans' home care under Medicaid claims the Medicaid participation amount as unusual medical expenses for purposes of computing the veteran's federal disability pension, the State can collect that participation amount of the veteran's pension as third-party liability;[19] and (2) when the veteran qualifies for aid and attendance provided by Medicaid, the State may collect that aid and attendance as third-party liability under the Medicaid program. Affirmed.

MORGAN and HOUGHTON, JJ., concur.

Review denied at 139 Wn.2d 1017 (2000).

---

[19]In other words, the State has already provided the services and, therefore, Medicaid reimbursement goes to the State, not to the veteran, who paid no money for these services. This reimbursement merely passes through the veteran's federal disability pension to the State.