# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| ESTATE OF DAVID LYNCH, | No. 56806-3-II |
| Appellant, | |
| v. | |
| WASHINGTON HEALTH CARE AUTHORITY, | UNPUBLISHED OPINION |
| Respondent. | |

LEE, J. — David Lynch appealed to the superior court a Health Care Authority (HCA) Board of Appeals Final Order, reversing an Office of Administrative Hearings (OAH) initial order and upholding a Department of Social and Health Services (DSHS) cost of care calculation for Lynch's Medicaid-provided in-home care services. Lynch challenged DSHS's designation of certain U.S. Department of Veteran Affairs (VA) benefits, specifically Aid and Attendance (AA) and Unusual Medical Expense (UME) benefits, as third party resources. Lynch also argued that the applicable regulation, WAC 182-513-1340(2), was invalid because it violated Medicaid law by creating an irrebuttable presumption that AA and UME benefits are always considered third party resources for Medicaid-provided services.

The superior court certified the case to the Court of Appeals for direct review under RCW 34.05.518. After Lynch's counsel submitted an opening brief, the parties were informed that Lynch had passed away. Lynch's estate (Estate) was substituted as a party. The HCA asserts that

No. 56806-3-II

the Estate does not have standing and, regardless, Lynch had failed to exhaust his administrative remedies. Because the Estate cannot establish standing under RCW 34.05.530, we dismiss this appeal.

FACTS

A.    BACKGROUND

David Lynch was a military veteran who received in-home care through Medicaid funded programs. Specifically, Lynch received care through Community First Choice (CFC) and Community Options Program Entry System (COPES). *See generally* WAC 182-513-1210; WAC 182-513-1100; ch. 388-106 WAC.

Lynch also collected a monthly pension from the VA and monthly Social Security benefits. In November 2019, DSHS[1] issued a cost of care letter to Lynch, which informed Lynch of his contribution for his in-home care. DSHS calculated Lynch's participation amount by adding together Lynch's income—his Social Security Benefit with his VA benefit—and then subtracting a Personal Needs Allowance (PNA).[2]

Lynch received 158 hours of in-home care per month, which translated into in-home care Monday through Friday for seven and a half hours per day. Lynch did not receive in-home care

---

[1] DSHS, as a delegate of the HCA, administers long term care services under the Washington Medicaid program. *See* WAC 388-106-0010. DSHS and the HCA will both be referred to depending on which agency made the relevant decision.

[2] An individual's PNA is "an amount set aside from a person's income that is intended for personal needs. The amount a person is allowed to keep as a PNA depends on whether the person lives in a medical institution, [an alternate living facility], or at home." WAC 182-513-1100; *see generally* WAC 182-513-1105.

2

on Saturday or Sunday. He required additional assistance on weekends, but did not have the money to pay for another caregiver.

Lynch also needed dental implants, which were estimated to cost $57,000. Medicaid did not cover the cost of dental implants, so Lynch intended to take out a loan or finance the cost. While Lynch obtained an estimate and loan projection for the dental implants, the record does not show that he took out a loan or incurred any dental expenses.

Because CFC and COPES did not meet Lynch's need for weekend in-home care or for dental implants, Lynch applied to the VA for increased benefits to help cover the additional costs. Specifically, Lynch applied for AA payments and UME payments from the VA.

In December 2019, the VA increased Lynch's monthly benefits to include an AA benefit and an UME benefit. The VA backdated the benefits award to February 2019 and issued a lump sum payment to Lynch for $8,130. Lynch used the lump sum payment to pay down credit card debt. The record does not show whether that credit card debt related to medical or dental expenses.

DSHS received notice of Lynch's increase in VA benefits. Then, on December 18, DSHS mailed a letter to Lynch stating that his contribution amount for his in-home services was increasing, effective January 1. DSHS designated Lynch's AA and UME benefits as a "Third Party Resource." Administrative Record (AR) at 390. The letter did not delineate between AA and UME benefits within the broader category of "Veteran's Benefits." AR at 390. However, the letter stated:

> [W]e are reviewing this change in VA benefits to make sure this is really countable income. We want you to have this notice, right away, showing the change in monthly cost of care. . . . If we determine that the new VA benefit is not countable, we will, of course, mail you a corrected letter for January.

3

AR at 388. Lynch contested DSHS's designation of the AA and UME benefits as third party resources in its cost of care calculation.

B.    PROCEDURAL HISTORY

1.    Administrative and Superior Court Proceedings

In January 2020, Lynch requested a hearing with the OAH regarding DSHS's assignment of his VA benefits as a third party resource. At that time, Lynch also communicated with a DSHS representative to explore whether Lynch could request an "exception to rule" (ETR) such that Medicaid would pay for Lynch's dental work. The DSHS representative informed Lynch that "since an ETR [was] not likely," the representative would submit for a hearing on the issue. AR at 459. Shortly after a hearing was requested, Lynch submitted additional information regarding dental implant expenses. DSHS determined that those expenses did not meet the criteria for "allowable medical expenses" under WAC 182-513-1350(6).[3] AR at 386.

---

[3] WAC 182-513-1350(6) provides:

> (a) The following incurred medical expenses may be used to reduce excess resources:
> (i) Premiums, deductibles, coinsurance, or copayment charges for health insurance and medicare;
> (ii) Medically necessary care defined under WAC 182-500-0070, but not covered under the state's medicaid plan. Information regarding covered services is under chapter 182-501 WAC;
> (iii) Medically necessary care defined under WAC 182-500-0070 incurred prior to medicaid eligibility. Expenses for nursing facility care are reduced at the state rate for the specific facility that provided the services.
> (b) To be allowed, the medical expense must:
> (i) Have been incurred no more than three months before the month of the medicaid application;
> (ii) Not be subject to third-party payment or reimbursement;
> (iii) Not have been used to satisfy a previous spenddown liability;
> (iv) Not have been previously used to reduce excess resources;

No. 56806-3-II

In February 2020, Lynch received an updated participation cost letter from DSHS. The letter stated in part:

Upon audit of your cost of care letter dated December 18, 2019, was found to have errors with the calculation of your cost of care and how we count your Aid & Attendance (A&A), Unusual Medical Expenses (UME), from your VA disability improved pension. The A&A and [UME], are considered a third-party resource and should be directly contributed to your provider, in addition to any other income above the [PNA] and/or allowable deductions, per WAC 182-513-1350(6) and WAC 182-515-1509 for your participation.

AR at 405.

In May 2020, OAH held a hearing. During the hearing, DSHS argued that under WAC 182-513-1340(2),[4] it properly treated Lynch's AA and UME benefits as a third party resource that it could collect. Lynch argued that under *Cordall*,[5] UME and AA benefits are not considered third party resources.

---

(v) Not have been used to reduce participation;
(vi) Not have been incurred during a transfer of asset penalty under WAC 182-513-1363; and
(vii) Be an amount for which the person remains liable.

[4] WAC 182-513-1340 "describes income the agency or its designee excludes when determining a client's eligibility and participation in the cost of care for long-term care (LTC) services." Specifically, WAC 182-513-1340(2) provides:

The agency . . . treats Department of Veterans Affairs (VA) benefits as follows:
(a) Any VA dependent allowance is countable income to the dependent unless it is paid due to unusual medical expenses (UME);
(b) UME, aid and attendance allowance, special monthly compensation (SMC) and housebound allowance are third-party resources;
(c) Benefits in subsection (2)(b) of this section for a client who receives long-term care services are excluded when determining eligibility, but are available as a third-party resource (TPR) as defined under WAC 182-513-1100 when determining the amount the institutionalized client contributes in the cost of care.

[5] *Cordall v. State*, 96 Wn. App. 415, 980 P.2d 253 (1999), *review denied*, 139 Wn.2d 1017 (2000).

5

In an initial order, OAH reversed DSHS's calculation of Lynch's cost of care, holding that DSHS made "a *per se* determination that the AA allowance is always a third party resource" under WAC 182-513-1340(2) and in Lynch's case, AA "should not be considered a third party resource available to reimburse the State for the cost of Medicaid services." Clerk's Papers (CP) at 24-25 (emphasis in original). OAH also reversed DSHS in regard to the UME benefits, holding that "where the UME portion of the VA pension *is not* reimbursement for Medicaid services, the State *is not entitled* to recover the UME portion of the pension as a third party liability." CP at 25 (emphasis in original). OAH based its decision on *Cordall*.

DSHS petitioned the HCA Board of Appeals for review of OAH's initial order. DSHS argued that based on federal and state Medicaid regulations, it was entitled to recover Lynch's AA and UME benefits under Medicaid third party liability. Additionally, DSHS argued that Lynch's projected expenses for dental implants were neither incurred nor medically necessary, as required under WAC 182-513-1350.

The HCA Board of Appeals Review Judge issued a final order, reversing the OAH initial order and holding that OAH improperly relied on case law when the regulations alone resolved Lynch's challenge. The Review Judge also held that DSHS correctly determined Lynch's Medicaid participation amount and third party resource contribution.

Lynch challenged the Review Judge's final order under the Administrative Procedure Act (APA), chapter 34.05 RCW, and what Lynch identified as an "inflexibl[e]" application of WAC 182-513-1340. CP at 8.

In March 2022, Lynch filed a motion in superior court to certify his APA claims for direct review at the Court of Appeals under RCW 34.05.518. The superior court granted Lynch's motion and certified the APA claims for direct review at the Court of Appeals.[6]

2. Substitution of Estate and Submission of Additional Evidence

In January 2023, Lynch's attorney filed Lynch's opening brief with this court. Then, in February, the HCA filed a motion to stay or strike the briefing deadline and to dismiss the proceeding (Motion to Stay or Strike). The HCA stated that Lynch had passed away approximately eight months earlier, in June 2022. The HCA argued that the case was now moot because this court would not be able to grant Lynch relief and "[b]ecause [Lynch] was deceased an opening brief could not be filed on his behalf, and [the HCA] should not be under any obligation to respond to it." Mot. to Stay or Strike at 3 (Feb. 7, 2023).

In response, Lynch's personal representative filed a motion to substitute the Estate as a party and requested that a substitution order be retroactive to the appeal filing date. The HCA argued that the Estate did not have standing under RCW 34.05.530 and asked this court to deny the motion to substitute. This court granted the motion to substitute the Estate pursuant to RAP 3.2(b)[7] and denied the HCA's Motion to Stay or Strike. The ruling stated:

---

[6] Separately, in March 2022, Lynch requested an ETR for additional personal care hours from DSHS. DSHS granted Lynch's request and authorized an additional 179 hours of care. Lynch assigned the additional 179 hours to a weekend caregiver, who provided five hours of care per day on Saturdays and Sundays.

[7] RAP 3.2(b) provides: "A party with knowledge of the death or declared legal disability of a party to review, or knowledge of the transfer of a party's interest in the subject matter of the review, shall promptly move for substitution of parties. The motion and all other documents must be served on all parties and on the personal representative or successor in interest of a party, within the time and in the manner provided for service on a party. If a party fails to promptly move for

This ruling does not imply any determination of respondent's argument in opposition that the Estate lacks standing. The question of standing does not inform the RAP 3.2(b) determination. . . .

. . . The appeal may proceed now that the Estate has been substituted as the appellant, and respondent is free to raise the standing issue in its briefing and argument to the panel.

Ruling on Mot. to Substitute at 1 (Feb. 27, 2023).

In March 2023, the HCA filed its response to the Estate's opening brief. The HCA also filed a motion to consider additional evidence not contained within the clerk's papers or administrative record "for the limited purpose of determining whether [this court's] jurisdiction . . . has been properly invoked." Mot. to Consider Additional Evid. at 1 (Mar. 20, 2023). The HCA specifically identified Appendix A and Appendix B of its brief as the additional evidence it sought to include. We granted the motion pursuant to RAP 9.11(a) "for the limited purposes of evaluating the jurisdictional issue." Ruling on Mot. to Consider Additional Evid. (Mar. 21, 2023).

## ANALYSIS

The Estate appeals the HCA Board of Appeals Review Judge's final order. Specifically, the Estate argues that the Review Judge erred in determining that AA and UME benefits qualified as third party resources.

The HCA argues that the Estate does not have standing to pursue this action and that Lynch failed to exhaust his administrative remedies. We hold that the Estate does not have standing under the APA and dismiss this appeal.

---

substitution, the personal representative of a deceased or legally disabled party, or the successor in interest of a party, should promptly move for substitution of parties."

A.     LEGAL BACKGROUND

To place the standing issue in context, a review of Medicaid long term care benefits and veteran's benefits is helpful.

1.      Medicaid Long Term Care Services

Medicaid is a cooperative arrangement between state and federal governments to provide medical care for eligible individuals. *See generally* 42 U.S.C. § 1396a; 42 C.F.R. § 430.10; *see Cordall*, 96 Wn. App. at 423, 980 P.2d 253. Washington participates in the Medicaid program. RCW 74.09.500. The HCA is the designated agency to administer Washington's Medicaid program and it may collaborate with other agencies in doing so. RCW 74.09.530; RCW 74.09.010. DSHS administers long term care services under Medicaid. *See* RCW 74.04.050; WAC 388-106-0010; WAC 388-106-0015; *see Samantha A. v. Dep't of Soc. & Health Servs.*, 171 Wn.2d 623, 630, 256 P.3d 1138 (2011).

Long term care services include services received through home and community based (HCB) waiver programs, such as COPES. WAC 182-515-1505; WAC 182-513-1100. HCB services are long term care services that are provided in a person's home or residential setting, as opposed to in an institution. WAC 182-513-1100.

Individuals eligible for HCB services must pay towards their cost of care. WAC 182-515-1509; WAC 182-515-1505. "A single client who lives in their own home . . . keeps a personal needs allowance (PNA) . . . and must pay the remaining available income toward cost of care after allowable deductions described in subsection (4) of this section." WAC 182-515-1509(2)(a). A person may deduct "[i]ncurred medical expenses which have not been used to reduce excess resources." WAC 182-515-1509(4)(f). "A client must pay the client's provider the sum of the

room and board amount, and the cost of care after all allowable deductions, and any third-party resources defined under WAC 182-513-1100." WAC 182-515-1509(7). WAC 182-513-1340(1) lists incomes that DSHS excludes when it determines an individual's participation in the cost of care for long term care services.

A third party resource means "funds paid to or on behalf of a person by a third party, where the purpose of the funds is for payment of activities of daily living, medical services, or personal care. The agency does not pay for these services if there is a third-party resource available." WAC 182-513-1100.[8] DSHS designates certain VA benefits as third party resources. WAC 182-513-1340(2)(b). Specifically, WAC 182-513-1340(2)(b) provides that "UME, aid and attendance allowance, special monthly compensation (SMC) and housebound allowance are third-party resources." Additionally, "[b]enefits in [WAC 182-513-1340(2)(b)] . . . for a client who receives long-term care services are excluded when determining eligibility, but are available as a third-

---

[8] The federal Medicaid program requires that a state Medicaid program must provide

> that to the extent that payment has been made under the State plan for medical assistance in any case where a third party has a legal liability to make payment for such assistance, the State has in effect laws under which, to the extent that payment has been made under the State plan for medical assistance for health care items or services furnished to an individual, the State is considered to have acquired the rights of such individual to payment by any other party for such health care items or services.

42 U.S.C. § 1396a(a)(25)(H); *see also* 42 C.F.R. § 435.610(a) (stating "as a condition of [Medicaid] eligibility, the agency must require legally able applicants and beneficiaries to . . . [a]ssign rights to the Medicaid agency to medical support and to payment for medical care from any third party"); 42 C.F.R. § 433.136 ("Third party means any individual, entity or program that is or may be liable to pay all or part of the expenditures for medical assistance furnished under a State plan.").

party resource (TPR) as defined under WAC 182-513-1100 when determining the amount the institutionalized client contributes in the cost of care." WAC 182-513-1340(2)(c).

2. Veterans' Benefits

The VA provides pensions to disabled veterans. *See generally* 38 U.S.C. §§ 1501 et seq.; 38 U.S.C. § 1521. A disability pension may be comprised of different kinds of payments, such as AA and UME benefits. *See generally* 38 U.S.C. § 1503.

a. Aid and Attendance benefits

AA benefits are "a monetary allowance that the veteran may use to purchase care from another, such as full-time nursing care, 'based on an assessment of the veteran's physical and medical need[.]'" *Cordall*, 96 Wn. App. at 425 (alteration in original) (quoting *Estate of Krueger v. Richland County Soc. Servs.*, 526 N.W.2d 456, 463 (N.D. 1994)). WAC 182-513-1340(2) provides that AA benefits "are third-party resources." WAC 182-513-1340(2)(b). For individuals who receive institutional long term care services, AA benefits "are available as a third-party resource . . . when determining the amount the institutionalized client contributes in the cost of care." WAC 182-513-1340(2)(c).

If Medicaid provides aid and attendance care, "the State can recover its cost because 'the Veterans Administration aid and attendance allowance program is a third party obligated to pay for those Medicaid-rendered services,' even though there is no statutory mandate requiring the veteran to use the allowance for such care." *Cordall*, 96 Wn. App. at 425 (internal quotation marks omitted) (quoting *Krueger*, 526 N.W.2d at 463).

   b.  Unusual Medical Expense benefits

  UME benefits are provided when an eligible veteran has an unreimbursed medical expense "to the extent that such amounts exceed 5 percent of the maximum annual rate of pension . . . payable to such veteran." 38 U.S.C. § 1503(a)(8); *see also* 38 C.F.R. § 3.262(l). Lynch qualified for, and received, UME benefits.

  Generally, "VA pensioners receive UME payments as *reimbursement* for previously incurred *out-of-pocket* medical expenses." *Edwards v. Griepentrog*, 804 F. Supp. 1310, 1312 (D. Nev. 1992) (emphasis in original). If UME benefits are paid due to unusual medical expenses, it is not considered countable income for the purposes of determining a participant's cost of contribution. WAC 182-513-1340(2)(a). However, if UME benefits are claimed for Medicaid-provided services, "the State is entitled to recover that amount of the veteran's pension as third-party liability under the Medicaid statutory scheme." *Cordall*, 96 Wn. App. at 430.

  Whether dental work is a Medicaid-provided service depends on many factors, including the particular Medicaid coverage the recipient receives, the type of dental work needed, and the necessity for the dental work. Given the record, Lynch's dental implants appear to not be a Medicaid-provided service. *See generally* WAC 182-501-0060; WAC 182-501-0070; WAC 182-535.

B.      STANDING

       1.      Legal Principles

To obtain judicial review under the APA, a person must have standing. RCW 34.05.530.

A person[9] has standing if they are aggrieved or adversely affected by an agency action. RCW

34.05.530. A person is aggrieved or adversely affected if all of the following conditions are met:

> (1) The agency action has prejudiced or is likely to prejudice that person;
> (2) That person's asserted interests are among those that the agency was required to consider when it engaged in the agency action challenged; and
> (3) A judgment in favor of that person would substantially eliminate or redress the prejudice to that person caused or likely to be caused by the agency action.

RCW 34.05.530; *see also Sarepta Therapeutics, Inc. v. Health Care Auth.*, 19 Wn. App. 2d 538,

549, 497 P.3d 454 (2021), *review denied*, 200 Wn.2d 1030 (2023) ("All three requirements must

be established for a person to have standing.").

We review standing de novo. *Ctr. for Biological Diversity v. Dep't of Fish & Wildlife*, 14

Wn. App. 2d 945, 981, 474 P.3d 1107 (2020). "The petitioner bears the burden of establishing

standing." *Sarepta Therapeutics*, 19 Wn. App. 2d at 549. The three prongs are divided into two

tests: the injury-in-fact test and the zone of interests test. *Id.* at 550.

       a.      Injury-in-fact test

The first and third prongs of RCW 34.05.530 "constitute the 'injury-in-fact' test." *City of*

*Burlington v. Liquor Control Bd.*, 187 Wn. App. 853, 862, 351 P.3d 875, *review denied*, 184 Wn.2d

1014 (2015) (quoting *Allan v. Univ. of Wash.*, 140 Wn.2d 323, 327, 997 P.2d 360 (2000). An

---

[9] "Person" is defined as "any individual, partnership, corporation, association, governmental subdivision or unit thereof, or public or private organization or entity of any character, and includes another agency." RCW 34.05.010(14).

individual has suffered an injury-in-fact if he or she can show "that the agency decision caused some specific and perceptible harm. In other words, there must be an invasion of a legally protected interest." *Sarepta Therapeutics*, 19 Wn. App. 2d at 550 (internal citation omitted). "'Conjectural or hypothetical injuries are insufficient to confer standing.'" *Id.* (quoting *Freedom Found. v. Bethel Sch. Dist.*, 14 Wn. App. 2d 75, 86, 469 P.3d 364 (2020), *review denied*, 196 Wn.2d 1033 (2021)). Furthermore, a person must show that a favorable decision will redress the injury. *KS Tacoma Holdings, LLC v. Shorelines Hr'gs Bd.*, 166 Wn. App. 117, 129, 272 P.3d 876, *review denied*, 174 Wn.2d 1007 (2012).

b.      Zone of interests test

The second prong is called the "'zone of interests'" test. *Sarepta Therapeutics*, 19 Wn. App. 2d at 550 (quoting *Allan*, 140 Wn.2d at 327). "The zone of interest test limits judicial review of an agency action to litigants with a viable interest at stake, rather than individuals with only an attenuated interest in the agency action." *City of Burlington*, 187 Wn. App. at 862. A party must show that the legislature intended that an agency protect the party's interests when taking an action. *KS Tacoma Holdings*, 166 Wn. App. at 127.

2.      No Standing

The HCA argues that this appeal should be dismissed because the Estate does not have standing under the APA. Specifically, the HCA argues that the Estate cannot meet either the injury-in-fact test or zone of interests test. The Estate argues that "[s]tanding under RCW 34.05.530 is determined by review of the person who filed the petition for judicial review," and that it should not matter if a petitioner who clearly has standing passes away while a case is pending. Reply Br. of Appellant at 30. Given our record, we agree with the HCA.

a.    Burden to establish standing

A party must have standing to obtain judicial review under the APA. RCW 34.05.530. The parties do not dispute that Lynch, while alive, had standing. However, the Estate does not cite any authority for the proposition that standing is determined by review of the person who filed for judicial review and not whomever later stands in that person's shoes. The Estate alleges because Lynch had standing, it need not establish its own independent standing. The Estate points to cases where a "personal representative steps into the shoes of the decedent." Reply Br. of Appellant at 32; *see Colburn v. Spokane City Club*, 20 Wn.2d 412, 413-14, 147 P.2d 504 (1944); *In re Estate of Hatfield*, 46 Wn. App. 247, 251, 730 P.2d 696 (1986), *review denied*, 108 Wn.2d 1018 (1987); *Sadler v. Wagner*, 3 Wn. App. 353, 355, 475 P.2d 901 (1970).

However, none of the cases address an estate's standing under the APA.[10] Both *Hatfield* and *Sadler* address a personal representative's administration of a deceased's estate and litigation

---

[10] The Estate also cites RCW 11.48.010 and RCW 11.48.090 as authority for it to proceed with this appeal. RCW 11.48.010 provides in part:

> It shall be the duty of every personal representative to settle the estate, including the administration of any nonprobate assets within control of the personal representative under RCW 11.18.200, in his or her hands as rapidly and as quickly as possible, without sacrifice to the probate or nonprobate estate. . . . The personal representative shall be authorized in his or her own name to maintain and prosecute such actions *as pertain to the management and settlement of the estate*.

(Emphasis added). RCW 11.48.090 provides: "Actions for the recovery of any property or for the possession thereof, and all actions founded upon contracts, may be maintained by and against personal representatives in all cases in which the same might have been maintained by and against their respective testators or intestates."

Here, the Estate is not prosecuting or maintaining an action as it pertains "to the management and settlement of" Lynch's estate. Therefore, RCW 11.48.010 is not applicable. Similarly, reading "actions" in RCW 11.48.090 in the context of RCW 11.48.010, it is clear the

directly related to administration of those estates. *See Hatfield*, 46 Wn. App. at 251; *Sadler*, 3 Wn. App. at 355. In *Colburn*, our Supreme Court allowed the executrix of a deceased party to be substituted for the deceased, and an appeal to proceed, in an action where the deceased was not the sole litigant and based on a statute that was since repealed in 1957. *Colburn*, 20 Wn.2d at 413-14; *see* Rem. Rev. Stat. § 1743, *recodified* as former RCW 4.88.250, *repealed by* LAWS OF 1957, ch. 7, § 10.

"[T]he Legislature did not confer standing on simply anyone who is dissatisfied with the outcome" of an agency decision. *Allan v. Univ. of Wash.*, 92 Wn. App. 31, 35-36, 959 P.2d 1184 (1998), *aff'd*, 140 Wn.2d 323 (2000). As it stands, the Estate, and not Lynch, is the current party requesting judicial review. Accordingly, the Estate bears the burden of establishing standing. *Sarepta Therapeutics*, 19 Wn. App. 2d at 549.

      b.     Injury-in-fact

The Estate argues that is entitled to repayment of Lynch's AA and UME benefits that DSHS had allegedly incorrectly included in Lynch's cost of care calculation.[11] The HCA argues that Lynch can no longer receive the care he originally had wanted the benefits for and "and there

---

legislature contemplated property actions "as pertain to the management and settlement of the estate." The Estate does not provide any argument as to how RCW 11.48.090 is applicable or why it should prevail on the issue of standing under the APA based on Washington's probate statutes.

Furthermore, to the extent that the Estate claims a protected property interest in the VA benefits, it fails to support the claim with any legal authority. The U.S. Supreme Court has held that "an expectation of public benefits [does not] confer a contractual right to receive the expected amounts." *Richardson v. Belcher*, 404 U.S. 78, 80, 92 S. Ct. 254, 30 L. Ed. 2d 231 (1971).

[11] We note that the Estate does not walk through a full standing analysis.

is no record that [Lynch] ever incurred out-of-pocket healthcare expenses relating to his AA or UME that the Estate could recoup or pay toward debt it holds." Br. of Resp't at 31.

Here, Washington's Medicaid regulations directly address AA and UME benefits—such benefits may be recouped by the State as third party resources to the extent that the benefits were claimed for Medicaid provided services. WAC 182-513-1340(2)(b); *see Cordall*, 96 Wn. App. at 431. The record does not contain Lynch's application to the VA for his AA or UME benefits, so we cannot assess how Lynch claimed the benefits. During the OAH hearing, Lynch asserted that he claimed the AA and UME benefits for dental implants. Lynch additionally stated he "could use" the AA benefits for weekend in-home care. 3 Verbatim Rep. of Proc. (May 28, 2020) at 54.

Even assuming Lynch's assertions to be true, the record does not show that Lynch incurred any unreimbursed dental expenses or unreimbursed expenses for additional in-home care and, thereby, leaving the Estate at a loss. Indeed, when Lynch initially applied for the VA benefits, the VA backdated the award of benefits such that he received a lump sum payment of $8,130, which he used to pay down credit card debt. Because the record does not show whether that credit card debt was for medical or dental expenses, and because Lynch presented only *estimates* to DSHS rather than receipts, an inference arises that the $8,130 lump sum did not pay for medical or dental services.

UME benefits are payments to veterans as *reimbursement* for out-of-pocket medical expenses. *Edwards*, 804 F. Supp. at 1312. This proposition is supported by Washington's Medicaid regulatory scheme, which states that for a medical expense to reduce excess resources, that expense must have been *incurred* and an amount for which an individual remains liable. WAC 182-513-1350(6)(b). Similarly, WAC 182-513-1340(2)(a) provides that VA benefits shall be

considered countable income *unless* it has "been paid due to unusual medical expenses." Again, the record does not show that Lynch, and now the Estate, incurred or was out of pocket for dental or other medical expenses.

Furthermore, the purpose of AA benefits is to pay for aid and attendance care, which Lynch was already receiving from Medicaid—albeit not at the level he needed—so DSHS was entitled to recover the AA payments. *See Cordall*, 96 Wn. App. at 425; WAC 182-513-1340(2). The proper mechanism for those AA payments to count towards weekend in-home care was for Lynch to request additional care hours via an ETR under WAC 388-106-1305. *See* WAC 388-106-1305. It appears that Lynch later did so and was granted weekend in-home care hours.

Finally, Lynch's challenge was to DSHS's designation of the AA and UME benefits as third party resources. Lynch's "injury" was that he could not purchase the additional medical and dental care he needed because of DSHS's decision to recoup the AA and UME payments as third party resources. Therefore, Lynch's remedy, via a refund from DSHS, would have been the ability to purchase his needed medical and dental care. However, now that he is deceased, any remedy that this court could provide to the Estate would not redress the original injury. *See* RCW 34.05.530(3).

Because the record does not show that Lynch, or his Estate, incurred any out of pocket medical or dental expenses and because a remedy in form of a refund would not redress Lynch's inability to purchase additional care since he is now deceased, the Estate cannot establish injury-in-fact.[12] Thererfore, we dismiss this appeal for lack of standing. *Allan*, 140 Wn.2d at 326-27.

---

[12] We note that the Estate also fails to meet the zone of interests test. The purpose of Medicaid, and specifically Medicaid long term care services, is to "support persons who need such services

ATTORNEY FEES

The Estate requests an award of attorney fees pursuant to RAP 18.1 and RCW 74.09.741(8). RAP 18.1 provides a party the "right to recover reasonable attorney fees or expenses on review" before this court, so long as the party requests the fees and "applicable law" grants the right to recover. RAP 18.1(a). RCW 74.09.741(8) provides in pertinent part that "[i]n the event the superior court, the court of appeals, or the supreme court renders a decision in favor of the applicant or recipient, the person is entitled to reasonable attorneys' fees and costs."

Here, the Estate is not the prevailing party in this appeal. Therefore, we deny the Estate's request for attorney fees.

---

at home or in the community." RCW 74.39A.005. It is the legislature's intent that DSHS "[e]nsure[s] that long-term care services are coordinated in a way that minimizes administrative cost." RCW 74.39.005(5); *see also* RCW 74.39A.007(3) (The legislature intends that "[l]ong-term care services be responsive and appropriate to individual need and *also cost-effective for the state*." (Emphasis added)). Federal Medicaid regulations direct that state Medicaid programs "must require legally able applicants and beneficiaries to . . . [a]ssign rights to the Medicaid agency to medical support and to payment for medical care from any third party." 42 C.F.R. § 435.610. In addition, the legislature has instructed DSHS to recover costs of state-funded long term care services from a person's estate. *See* RCW 43.20B.080(3); RCW 74.39A.170(1).

Based on the language of the Medicaid statutory and regulatory scheme, it is clear that the legislature did not intend DSHS to contemplate the interests of an individual's estate and the preservation of that estate, especially since DSHS may recover funds from an estate for Medicaid provided services. *See KS Tacoma Holdings*, 166 Wn. App. at 127.

The viability of the interest at stake is based on whether a party can show the legislature intended an agency to protect its interests when taking an action. *City of Burlington*, 187 Wn. App. at 863. Because the Estate cannot point to legislative intent to preserve funds in an estate when it comes to recovery of Medicaid costs, the Estate fails to meet the zone of interests test.

No. 56806-3-II

CONCLUSION

Because the Estate cannot establish standing under RCW 34.05.530, we dismiss this appeal.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Lee, J.

We concur:

_____
Glasgow, CJ

_____
Che, J.